**43**

Holly S. Burgess (SBN 104757)
LAW OFFICES OF HOLLY S. BURGESS
680 Auburn Folsom Road, Suite 109
Auburn, CA  95661
Telephone:  (530) 889-8900
Facsimile:   (530) 889-8988
_hollyburgess@lohsb.com_

Attorney for Plaintiff
RICHARD S. MYERS

THE UNITED STATES DISTRICT COURT

THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| RICHARD S. MYERS,<br><br>               Plaintiff,<br>      vs.<br><br>ENCORE CREDIT, *a Delaware corporation*;<br>FIDELITY NATIONAL TITLE INSURANCE<br>COMPANY;<br>MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC.;<br>T.D. SERVICE COMPANY;<br>EMC MORTGAGE CORPORATION *a Delaware*<br>*corporation*;<br>BANK OF AMERICA, N.A.;<br>BEAR STEARNS ASSET BACKED<br>SECURITIES I LLC; *a Delaware limited liability*<br>*company*,<br>BEAR STEARNS ASSET BACKED<br>SECURITIES I TRUST 2007-HE5;<br>LASALLE BANK NATIONAL ASSOCIATION;<br>and DOES 1-20, inclusive,<br><br>               Defendants. | **CASE NO:**<br><br>**COMPLAINT FOR:**<br><br>1.  VIOLATIONS OF TRUTH IN<br>     LENDING ACT;<br>2.  VIOLATIONS OF REAL ESTATE<br>     SETTLEMENT PROCEDURES ACT;<br>3.  VIOLATIONS OF FAIR CREDIT<br>     REPORTING ACT;<br>4.  FRAUD;<br>5.  UNJUST ENRICHMENT;<br>6.  CIVIL RICO VIOLATIONS;<br>7.  VIOLATION OF CALIFORNIA<br>     BUSINESS & PROFESSIONS CODE<br>     §17200<br>8.  BREACH OF SECURITY<br>     INSTRUMENT<br>9.  WRONGFUL FORECLOSURE<br>10. QUIET TITLE<br><br>**PLAINTIFF DEMANDS A JURY<br>TRIAL** |

## PARTIES

1.   Plaintiff is RICHARD S. MYERS ("Plaintiff" or "MYERS") an individual who is the owner

- 1 -

1 of real property located at 8513 Pearl Way, Citrus Heights, California, APN: 204-0050-011 ("the

2 Subject Property").  The legal description of the Subject Property is attached hereto and incorporated

3 herein as **Exhibit "A"**.

4     2.    Defendant ENCORE CREDIT, *a Delaware corporation* ("ENCORE"), was at all times

5 mentioned herein, engaged in business as a bank and/or servicer of mortgage loans in the county of

6 Sacramento, California.

7     3.    Defendant T.D. SERVICE COMPANY  ("T.D. SERVICE"), a wholly-owned subsidiary of

8 Bank of America, N.A., on information and belief and at all times mentioned in this Complaint was

9 engaged in the business of title insurance, banking services, including foreclosure, and acting as

10 trustee for banks, mortgage holders and lien holders in the county of Sacramento, California.

11     4.    Defendant FIDELITY NATIONAL TITLE INSURANCE COMPANY ("FIDELITY"), on

12 information and belief, at all times mentioned in this Complaint was engaged in the business of title

13 insurance, banking services, including foreclosure, and acting as trustee for banks, mortgage holders

14 and lien holders in the county of Sacramento, California.

15     5.    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") at

16 all times relevant herein was incorporated in the state of Delaware, with its principal place of business

17 in Reston, Virginia.  MERS was conducting business including, but not limited to, operating a

18 database, assigning mortgages (specifically including an attempt to assign the subject mortgage

19 herein) in violation of California Corporations Code section 191(d) in the county of Sacramento,

20 California.

21     6.    Defendant BANK OF AMERICA, N.A., ("BOA") as successor by merger with LaSALLE

22 BANK NATIONAL ASSOCIATION ("LaSALLE").  LaSALLE was purchased by BANK OF

23 AMERICA whose corporate headquarters is in Charlotte, North Carolina.  LaSALLE, on information

24 and belief, and at all times mentioned herein, was in the business of banking services, including

- 2 -

*Myers v. Encore*                                   **COMPLAINT**

1  foreclosure, in the county of Sacramento, California.

2      7.    Defendant EMC MORTGAGE CORPORATION, a Delaware corporation ("EMC").  EMC is

3  100% owned by THE BEAR STEARNS COMPANIES LLC, a Delaware LLC.  The BEAR

4  STEARNS COMPANIES LLC is 100% owned by JPMORGAN CHASE & CO.  On information and

5  belief, EMC at all times mentioned in this Complaint was engaged in the business of title insurance,

6  banking services, including foreclosure, and acting as trustee for banks, mortgage holders and lien

7  holders in the county of Sacramento, California.

8      8.    BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2007-HE5 ("BEAR TRUST")

9  is an unregistered entity in California, based on information and belief, was at all relevant times

10  mentioned herein a pooling and servicing trust of mortgages, in which the Subject mortgage and

11  Property were placed.  Based on information and belief, BEAR SECURITIES TRUST is or was the

12  holder of the subject mortgage note.

13     9.    Defendants Doe 1 through Doe 10 are believed to be the current beneficiaries of the Deed of

14  Trust, if the lien has not been extinguished by operation of law.

15     10.  Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued as

16  Doe 1 through Doe 10, i.e., the Beneficiaries.  Each fictitiously named Defendant is in some manner

17  liable to Plaintiffs, claims some right, title, or interest in the Subject Property, or both.

18     11.  Plaintiff does not know the true names, capacities, or basis of liability of Defendants sued as

19  Doe 11 through Doe 20.  Each fictitiously named Defendant is in some manner liable to Plaintiffs,

20  claims some right, title, or interest in the Subject Property, or both.

21     12.  At all times relevant to this Complaint, each of the Defendants was the agent or employee of

22  each of the remaining Defendants, and was acting within the course and scope of such agency or

23  employment.

24

- 3-

*Myers v. Encore*                                                                      **COMPLAINT**

**JURISDICTION**

13.   Pursuant to 28 U.S.C.A. §1331, this court has original jurisdiction based on the laws of the United States, as alleged herein.

14.   Pursuant to 28 U.S.C. §1367(a), this court has supplemental jurisdiction over the related state court claims.

**FACTS COMMON TO ALL CAUSES OF ACTION**

15.   Not only is the Plaintiff the victim of fraud, unlawful and predatory lending and an underlying conspiracy to commit fraud, but Mr. MYERS is also facing eviction, again, from his home through foreclosure and a Trustee Sale that is <u>currently scheduled for June 27, 2011</u>, which was initiated and advanced by Defendants in violation of the notice and standing requirements of California foreclosure law.  Defendants previously sold Mr. MYERS home to BOA as trustee for BEAR TRUST, the "foreclosing beneficiary", at a Trustee's Sale on February 1, 2011. The *Trustee's Deed Upon Sale*  attached hereto and incorporated herein by reference as **Exhibit "H"**. Defendant T.D. SERVICE recorded a *Trustee's Deed Upon Sale* on February 7, 2011.  On February 25, 2011, BOA filed and subjected Plaintiff to an unlawful detainer.  On March 16, 2011, T.D. SERVICE recorded a *Notice of Rescission of a Trustee's Deed Upon Sale*, which stated on its face that the Trustee's sale was done "through inadvertence and oversight".  However, on June 27, 2011, Plaintiff is again facing the unlawful sale of his home and eviction.

16.   On or about March 8, 2007, MYERS executed a written first Deed of Trust ("DOT") and security instrument, with ENCORE as the "lender" and FIDELITY as the trustee.  A copy of the DOT is attached as **Exhibit "B"** and incorporated herein by reference.

17.   The DOT and Security Instrument have never been transferred from ENCORE to the foreclosing entity T.D. SERVICE.  Plaintiff is informed and believes the DOT has been transferred to an unknown entity as the time of execution on March 8, 2007, or was transferred to other unnamed

1  entities and that the parties claiming a right or beneficial interest in the DOT, in fact have no

2  legitimate claims, as more fully explored below, in the NINTH CAUSE OF ACTION for

3  WRONGFUL FORECLOSURE.

4    18.   All Defendants, if any of the Defendants has any interest in the Note and DOT (referred to

5  collectively as "Mortgage"), are responsible and liable herein for all the actions of its predecessor-in-

6  interest, the owner of the subject mortgage loan and the servicer/agent.

7  **Chain of Title Problems**

8    19.   The chain of title is hopelessly confused, convoluted, and **broken**, with multiple entities

9  claiming a pecuniary interest in the Subject Property. The true creditor, the one who holds the rights

10  to the obligation on Mr. MYERS's note is absent from the chain of title.

11    20.   The recorded documents in the chain of title confirm that Plaintiff's loan was securitized as

12  MERS's database was used to fraudulently convey "title".  MERS is a database document tracking

13  service and was never a party to the transaction, or entitled to payment from Plaintiff. The MERS

14  scheme was developed to attempt to circumvent the recording fees that are inherent to the California

15  laws regarding assignments of mortgages. Based on information and belief MERS is only used when

16  loans are securitized.[1]  Plaintiff believes his loan was transferred into Defendant BEAR SECURITIES

17  TRUST, in violation of federal law.  See attached hereto and incorporated herein by reference

18  **Exhibit M.**

19    21.   At the time of the Notice of Default, the recorded interests also contradict the assertion that

20  T.D. SERVICE was the foreclosing beneficiary, as detailed supra, and reveal a slew of other illegal

21  actions.  Starting from the beginning, the chain of recordation is as follows:

22  / / / /

23

24

---

[1] *Hooker v. Nw. Tr. Services, Inc.*, CIV. 10-3111-PA, 2011 WL 2119103 (D. Or. May 25, 2011)

*Myers v. Encore*                                                                          **COMPLAINT**

**First Deed of Trust:**

| DATE | DOCUMENT | PARTIES | |
|---|---|---|---|
| **Filed:** 3/15/2007 | **GRANT DEED** | Grantor: | MALAKIA, LLC |
| | | Grantee: | MYERS |
| | | Notarized: | January 26, 2007 |
| **Filed:** 3/15/2007 | **DEED OF TRUST** Loan #397549 $226,320 | Lender/Beneficiary: | ENCORE |
| | | Borrower/Trustor: | MYERS |
| **Signed:** 3/8/2007 | **[Attached as Exhibit "B"]** | Trustee: | FIDELITY |
| | | Nominee: | MERS |
| **Filed:** 5/30/2008 | **NOTICE OF DEFAULT & ELECTION TO SELL UNDER DEED OF TRUST** Loan #0019543958/Myers **\*\* *NO Declaration of Compliance* \*\*** **[Attached as Exhibit "C"]** | Trustor: | MYERS |
| | | Trustee | TD SERVICE |
| | | Contact to stop foreclosure: | MERS TD SERVICE |
| | | Notice Signers: | TD SERVICE By Fidelity as agent for Trustee |
| | | Signature: | By Merrlyn L. Aguas |
| | | Date Notice signed: | 5/29/2008 |
| **Filed:** 8/20/2008 | **SUBSTITUTION OF TRUSTEE** **[Attached as Exhibit "D"]** | Orig Trustee: | FIDELITY |
| | | New Trustee: | TD SERVICE |
| | | Present Beneficiary: | "undersigned" |
| | | "undersigned": | MERS |
| | | Signatures: | By Liquenda Allotey ?, vice president By Christine Anderson vice president |
| | | Dated **signed**: | 5/29/2008 |
| | | Dated **Notarized**: | 6/3/2008 |
| | | Affidavit of Service: | 8/18/2008 |

- 6 -

| | | | |
|---|---|---|---|
| **Filed:**<br><br>9/2/2008 | **NOTICE OF TRUSTEE'S SALE**<br><br>**[Attached as Exhibit "E"]**<br><br>**Sale date: 9/22/2008** | Trustor:<br><br>Trustee:<br><br>Signer:<br><br><br><br>Signature:<br><br><br>Date: | MYERS<br><br>TD SERVICE<br><br>TD SERVICE, trustee, as authorized agent for the beneficiary<br><br>By: Patricia A. Randall, Vice President<br><br>9/2/2008 |
| **Filed:**<br><br>7/23/2010 | **ASSIGNMENT OF DEED OF TRUST**<br><br>**"For Value Received" MERS "grants, assigns, transfers…all beneficial interest"**<br><br>**[Attached as Exhibit "F"]** | Assignor:<br><br>Assignee:<br><br><br><br><br><br>Signer:<br><br>Signature:<br><br><br><br>Effective date: | MERS<br><br>Bank of America as successor by merger to LaSalle Bank, as Trustee for Certificateholders of Bear Securities Trust<br><br>MERS<br><br>By Mary Cook, vice president<br>By Whitney K. Cook, vice president<br><br>5/28/2010 |
| **Filed:**<br><br>1/12/2011 | **NOTICE OF TRUSTEE'S SALE**<br><br>**[Attached as Exhibit "G"]**<br><br>**Sale date: 2/1/2011** | Trustor:<br><br>Trustee:<br><br>Signer:<br><br><br><br>Signature:<br><br><br>Date: | MYERS<br><br>TD SERVICE<br><br>TD SERVICE, trustee, as authorized agent for the beneficiary<br><br>By: Crystal Espinoza, Assistant Secretary<br><br>1/7/2010 |

- 7 -

*Myers v. Encore* **COMPLAINT**

| | | | |
|---|---|---|---|
| **Filed:** | **DECLARATION and TRUSTEE'S DEED UPON SALE** | Declarant: | TD SERVICE |
| | | Grantee: | "foreclosing Beneficiary" /Bank of America as successor by merger to LaSalle Bank, as Trustee for Certificateholders of Bear Securities Trust |
| | **"Grantee paid $0 documentary transfer tax"** | Declarant Signer: | TD SERVICE |
| | **[Attached as Exhibit "H"]** | Declarant Signature: | By Vanessa Varelas, Sr. Trustee's Sale Technician |
| | | Date Declaration Signed: | 2/1/11 |
| | | ************** | ************** |
| | | Deed Trustor: | Myers |
| | | Deed Grantor/Trustee: | TD SERVICE |
| | | Deed Grantee: | Bank of America as successor by merger to LaSalle Bank, as Trustee for Certificateholders of Bear Securities Trust |
| | | Grantor Signer: | TD SERVICE |
| | | Grantor Signature: | By: Cheryl L. Grech, Assistant Secretary By: Crystal Espinoza, Assistant Secretary |
| | | Date Deed signed/notarized: | 2/3/11 |
| | **NOTICE OF FILING UNLAWFUL DETAINER COMPLAINT Case No. 11UD01822** | Plaintiff: | Bank of America as successor by merger to LaSalle Bank, as trustee |
| | | Defendant: | Myers |
| | **[Attached as Exhibit "I"]** | Date: | 2/25/11 |

- 8-

| | | | |
|---|---|---|---|
| | **(3-day notice) NOTICE TO OCCUPANT(S) TO VACATE PREMISES AFTER A MORTGAGE FORECLOSURE SALE**<br><br>**[Attached as Exhibit "J"]** | To:<br><br>Signer:<br><br><br><br>Date: | Myers<br><br>By: Deborah M. Bass, Esq, authorized agent for owner<br><br>2/3/11 |
| **Filed:**<br><br>**3/16/11** | **NOTICE OF RESCISSION OF A TRUSTEE'S DEED UPON SALE**<br><br>**[Attached as Exhibit "K"]** | Trustee:<br><br>Rescinded Deed Grantor:<br><br>Rescinded Deed Grantee:<br><br><br><br><br><br>Signer:<br><br>Signatures:<br><br><br><br><br>notarized: | TD SERVICE<br><br>TD SERVICE<br><br>Bank of America as successor by merger to LaSalle Bank, as Trustee for Certificateholders of Bear Securities Trust<br><br>TD SERVICE<br><br>By: Crystal Espinoza, [no title]<br>By: Kimberly Coonradt, [no title]<br><br>3/9/11 |
| **Filed:**<br>**4/1/2011** | **LIS PENDENS** | Plaintiff: | MYERS |
| **Filed:**<br><br>**6/2/2011** | **NOTICE OF TRUSTEE'S SALE**<br><br>**[Attached as Exhibit "L"]** | Trustor:<br><br>Trustee:<br><br>Signer:<br><br><br><br>Signature:<br><br><br>Date: | MYERS<br><br>TD SERVICE<br><br>TD SERVICE, trustee, as authorized agent for the beneficiary<br><br>By: Crystal Espinoza, Assistant Secretary<br><br>5/31/2011 |

22.   There is no valid recorded document that gave the foreclosing entity TD SERVICE the right to foreclose.

23.   First, the *Notice of Default* in this case, recorded on May 30, 2008 ("NOD"), is fatally defective and void.  Under California Civil Code 2924(a), only a trustee, mortgagee, beneficiary or

- 9 -

their authorized agent may record the NOD.  Here, on page 2, the NOD states that:

> "NOTICE IS HEREBY GIVEN THAT: T.D. SERVICE COMPANY is duly appointed Trustee…."
>
> ---
>
> …the present Beneficiary under such Deed of Trust has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale…."

However, as of the recording date May 30, 2008, there was no substitution of trustee giving TD SERVICE any authority to act.   Therefore, T.D. SERVICE could not *possibly* comply with California foreclosure code 2924(a) because T.D. SERVICE never had authority to act.

24.  Also, California Civil Code 2924c requires that the NOD provide the name and contact information of the beneficiary or mortgagee for borrowers to find out the amount they must pay, or to arrange for payment to stop the foreclosure.  Here, the NOD states that the borrower should contact MERS c/o T.D. SERVICE —  neither of which ever had a security interest in Plaintiff's Note or DOT, discussed supra.

25.  In addition, the NOD was signed "By:  FIDELITY, as Agent" of T.D. SERVICE.   Again, there is no recorded agency agreement between T.D. SERVICE, or FIDELITY, or MERS.  Although FIDELITY was the Trustee of record when T.D. SERVICE recorded the NOD, the NOD does not state that FIDELITY was acting as the Trustee.  Rather, the NOD states that T.D. SERVICE is the "duly appointed trustee" and that the beneficiary "executed and delivered" to the duly appointed trustee" (T.D. SERVICE, *not* FIDELITY) "a written Declaration of Default and Demand for Sale".  As both MERS and T.D. SERVICE are "strangers" to the transactions, T.D. SERVICE never had the authority to foreclose on Plaintiff's home.

26.  Further, the NOD was signed "By: Merrilyn L. Aguas" without stating any corporate *signatory* capacity whatsoever as required by Corporations Code 313.  As the NOD is non-compliant with California law, it is therefore invalid, should be stricken from the Official Records, and should be expunged.  The NOD is attached hereto as **Exhibit "C"**.

- 10-

1    **27.**  Another fatally defective, void document is MERS's *Substitution of Trustee*, filed on

2    August 20, 2008.   MERS identifies itself as "the present beneficiary" and purports to substitute T.D.

3    SERVICE as the new trustee of the DOT.

4    **28.**  First, the "Lender" ENCORE did not execute this document.  Section 24A of the DOT states

5    that the Lender, and only the Lender, is authorized to substitute the trustee.  The last sentence of

6    section 24 states that this "procedure for substitution of trustee shall govern to the exclusion of all

7    other provisions for substitution".  In addition, California Civil Code §2934(a)(2)A through D

8    requires strict compliance to substitute a trustee.  In this case, Defendants did not take any of the

9    required steps as Defendants filed nothing in the County Recorder's Office to show compliance with

10   the Code.

11   **29.**  Second, MERS is attempting to validate a substitution and assignment *after* the NOD was

12   filed.  The NOD was filed by T.D. SERVICE as "duly appointed trustee" on May 30, 2008,

13   BEFORE it was allegedly assigned any authority to foreclose on May 30, 2008.  Any trustee's

14   subsequent actions *cannot* later be granted validity by the court, because they were VOID not

15   voidable in the first place. Cal.Civ.Code § 2313

16   **30.**  Finally, MERS, whether a "Nominee" or not, has not established any agency under this

17   section or anywhere at all in the dot under Cal. Civ. Code §§ 2306 and 2309.  When beneficial

18   interest under the promissory Note is assigned, the assignee may exercise a security interest in real

19   property provided that the assignment is "duly acknowledged and recorded". Cal. Civ. Code

20   § 2932.5; also See, Cal. Civ. Code §§ 2306 and 2309.  Under these California Code requirements,

21   absent a duly acknowledged and recorded instrument, the Deed of Trust is defective and cannot

22   convey any beneficial interest to MERS in any capacity. Therefore, the Deed of Trust is at the least

23   voidable, and appears to be void under California laws.  Therefore, no security interest can be

24   conveyed by this defective instrument, which was intentionally drafted by Defendants and/or their

*Myers v. Encore*                                                                                          **COMPLAINT**

1    affiliates.

2        **31.**    Under Cal. Civ. Code § 2309, "an oral authorization is sufficient….except that an authority

3    to enter into a contract required by law to be in writing can only be given by an Instrument in

4    writing**."** Since the previous language of the Deed of Trust is clear and unambiguous as to the

5    requirement of an acknowledged and executed instrument, the necessity of compliance with Cal.

6    Civ. Code is mandatory and thus an acknowledged and recorded written authorization is required.

7    Without such written authorization, no security interest was conveyed. Based on the foregoing

8    MERS does not have any beneficial interest in Plaintiffs' Home and thus does not have legal

9    standing to foreclose on Plaintiffs' Home.

10        **32.**    The federal courts have held that even if MERS was the original "nominee" of the

11    beneficiary, at the time of the foreclosure, it was not the beneficiary. [2]  The Plaintiff's DOT does not

12    grant any authority apart from the nominal role.[3]   California statutes pertaining to assignments of

13    deeds of trust are designed to protect the trustor/borrower's rights in nonjudicial foreclosures.[4]   The

14    courts analyzed the standardized DOT that listed MERS as the nominee beneficiary and found that

15    the lender had "pervasive" rights, including the exclusive right to payments and to foreclose

16    nonjudicially; that MERS' status was 'nominal'; and that the lender never allocated any authority to

17    MERS to enforce the DOT or to foreclose nonjudicially.[5]   Under the DOT, MERS is not the payee

18    of the secured debt, has never been entitled to payment, and thus could not satisfy the requirements

19    of Civil Code § 2932.5[6].

20        **33.**    Since MERS never acquired the Note, they are neither the Lender nor its successor or

21    assign, and, therefore, cannot legally substitute a trustee pursuant to the restrictive language of the

22    DOT and the California codes.  Consequently, the NOD, the *Substitution of Trustee*, and all

23    [2]  *In re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011)
     [3] *Id.*
24    [4] *Id.* p.4-5.
     [5] *Id.* p.2.
     [6] *Id.* p.9, fn 12.

*Myers v. Encore*                                                              **COMPLAINT**

1  subsequent recorded documents are fatally defective. The MERS *Substitution of Trustee* is attached

2  as **Exhibit "D".**

3      34.   The *Notices of Trustee's Sale* that T.D. SERVICE filed on September 2, 2008, January 12,

4  2011, and June 2, 2011, are also fatally defective.  As discussed, infra, T.D. SERVICE there was

5  never a valid substitution of trustee giving TD SERVICE any authority to act.   Therefore, the

6  *Notices* are utterly void, ultra vires, powerless and without legal validity.  The *Notices of Trustee's*

7  *Sale* are attached as **Exhibits "E", "G" and "L".**

8      35.   In addition, the June 2, 2011, *Notice of Trustee's Sale* contains a declaration that Plaintiff

9  was contacted "in order to assess the borrower's financial situation and explore options for the

10  borrower to avoid foreclosure" pursuant to California Code of Civil Procedure 2923.5.   Plaintiff

11  hereby challenges the veracity of the "declaration" in the first instance, because he was not

12  contacted as alleged in the declaration.

13      36.   The *Assignment of Deed of Trust* in this case is also defective.  With the *Assignment*, filed on

14  July 23, 2010, MERS purports to grant/ assign to BOA as trustee for BEAR TRUST — "for value

15  received" — all beneficial interest in Plaintiff's DOT, as well as the Note.  However, under California

16  statutes, MERS does not have the power of sale:

17              Where a power to sell real property is given to a mortgagee, or other
             encumbrancer, in an instrument intended to secure the payment of
18           money, the power is part of the security and vests in any person who by
             assignment becomes entitled to payment of the money secured by the
19           instrument. *The power of sale may be exercised by the assignee if the
             assignment is duly acknowledged and recorded.*
20
21  Civ. § 2932.5 [emphasis added].  As discuss infra, MERS was never the actual holder or assignee of

22  the underlying notes.  Therefore, MERS's purported assignment of the beneficial interest in

23  Plaintiff's Note and DOT is void; and at the time of foreclosure, ENCORE was still the

    "beneficiary" of record.

24      37.   There are multiple breaks in the chain of title upon which Defendants' alleges their claims.

*Myers v. Encore*                                                                          **COMPLAINT**

1  A break in the chain of title is a break in ownership.

2  **Securitization of Plaintiff Note and Deed of Trust**

3  38.  BOA asserts that it holds the beneficial interest and the right to foreclose on the Note

4  securing the DOT.  Plaintiff is informed and believes that ENCORE never lawfully assigned its

5  interest in Plaintiff's Note and DOT to the mortgage-backed security trust, but was paid in full for its

6  participation in the scheme and that it no longer has an interest in the DOT or the Note secured

7  thereby, and the subsequent parties in the defective chain of title have no beneficial interest in the

8  Plaintiff's Note and DOT and therefore no legal basis on which to claim the right to foreclose on

9  Plaintiff's property.

10  39.  Plaintiff is informed and believes that in 2007 ENCORE was paid a fee by the Underwriters

11  of the securitized trust scheme, then electronically transferred a copy of the Note only, without the

12  deed, to BOA without obtaining the necessary intervening endorsements and assignments required

13  by the trust as a beneficiary,  assigned its interest in the DOT to an unknown entity, so that it never

14  had  any financial interest or risk in the DOT or the Note secured thereby, other than a non-disclosed

15  fee arrangement with the Underwriters of the securitization scheme, which was ultimately paid by

16  Plaintiff.

17  40.  ENCORE, the "Lender" on the original Promissory Note, is a fictitious "surrogate" lender.

18  Plaintiff's note and DOT were used in an investment scheme known as a "mortgage-backed"

19  security investment trust.  These trusts, strictly governed under New York law by their express

20  terms, were created by private institutional investment houses and large banks to use the

21  homeowner's credit and an inflated appraisal, along with the borrower's promise to pay on a

22  predatory loan created by these same parties, as the basis to create billion- dollar Real Estate

23  Mortgage Investment Conduit (REMIC) trusts. A monthly fee, as a percentage of the borrower

24  homeowner's mortgage payment which was included in this REMIC to which Plaintiff's note and

1   DOT were to be conveyed, was not disclosed to homeowner at the time loan was offered in

2   violation of TILA, and RESPA, nor included in the Plaintiff's loan and escrow closing statements,

3   thereby violating federal law.

4      41.   The originators of the loan immediately and simultaneously securitized (allegedly) the note

5   through the means of conversion of an Article III negotiable Instrument (U.C.C.) into Article IX

6   (U.C.C.), non-negotiable paper.  The beneficial interest in the note was never in the surrogate lender.

7   In this case, neither FIDELITY nor MERS, nor ENCORE was ever intended to be the Obligee, but

8   merely a "stand-in" beneficiary with no real financial interests in the mortgage loan.  T.D.

9   SERVICE, a servicer, or some party, has declared default and is not in privity with the lender.  The

10  true owner (s) or unknown beneficiary(s) of the mortgage loan has not declared a default, cannot

11  declare a default under its Trust Agreement, and does not have any valid — documented by

12  recordation and endorsement —  interest in the Note that allows for any remedial actions to be

13  undertaken by the Defendants or any of their agents/affiliate).

14     42.   The obligation, as a contract, reflected by the note allegedly secured by the Plaintiff's DOT,

15  has been satisfied in whole or in part because the investors who furnish the funding for these loans

16  have been paid to the degree that extinguishments of the debts has occurred with the result that there

17  exist no obligations on which to base any foreclosure on the property owned by Plaintiff.

18  **Exhibit M, pages 31 and 39.**   Defendants have and continue to cloud the title and illegally collect

19  payments and attempt to foreclose upon the property of the Plaintiff when they do not have lawful

20  rights to foreclose, and are not holders-in-due-course of the notes.

21     43.   The mortgage loan contract is, at most, an unsecured debt.  The successor in interest to the

22  original surrogate ENCORE is ultimately responsible for the predatory nature of the transaction and

23  the resulting defects in the record chain of title. However, it is evident from the record that no party

24

*Myers v. Encore*                                                                              **COMPLAINT**

1   of record has been conveyed any beneficial or legal interest in the loan after the recording of the

2   DOT on March 15, 2007.

3       44.  Certain individuals, who were the employees of the Servicers, T.D. SERVICE, and even the

4   employees of the law firms, executed and notarized forged documents as to the ownership of the

5   loan.

6       45.  T.D. SERVICE and/or BOA represented itself as a "Trustee".  However, BOA and/or T.D.

7   SERVICE is not a common law Trustee, rather, they are special Corporate Trustees with limited

8   ministerial duties.  These rights, duties and obligations do not include any remedial actions, such as

9   foreclosure, as they relate to the assets of the REMIC Trust and are strictly governed under the MBS

10  trust Agreements, if the trust ever properly conveyed the asset. The trustee cannot represent the

11  interests of a trust that never received the asset.

12      46.  The Servicers, EMC and/or T.D. SERVICE are merely administrative entities, under limited

13  power of attorney, who collect the mortgage payments and escrow funds. The Servicer has no

14  greater power than its Principal, the Trustee, and lacks the authority to bring any action on behalf of

15  the REMIC Trust. The Trust participants have executed Trust Agreements, under oath, with the

16  Security Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage

17  asset "pass-through" entities wherein they can never own or manage the mortgage loan assets in the

18  REMIC Trust.  This allows them to qualify as a Tax Free Real Estate Mortgage Investment Conduit

19  ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").  .

20      47.  Importantly, FIDELITY and/or T.D. SERVICE and/or ENCORE, as "Trustee" or custodian,

21  is charged with ensuring that only assets (Notes and Deeds) that are properly conveyed within 90

22  days of the "**closing date**" (***IRS Rule 860D (a)(4)***), as defined within the REMIC Trust Agreement,

23  are part of its scope of authority.  Every mortgage in the Trust must be conveyed pursuant to the

24

1  Sale and Servicing Agreement without exception.  In this case, the closing date is May 30, 2007.

2  **Exhibit M, page 25.**

3      48.  The promissory note was never conveyed pursuant to the Trust mandates and the mortgage

4  was never conveyed or recorded pursuant to the proper chain of custody and intervening

5  endorsements and Assignments within the Trust Agreement(s) or under California statutory

6  construction.

7      49.  In this scenario, even if the foreclosing entity produces a copy of a note, or even an alleged

8  original, the mortgage loan was not conveyed into the trust under the requirements of the prospectus

9  for the trust or the REMIC requirements of the IRS or California law. Mere possession of an

10  Instrument does not confer the status of a person entitled to enforce the Instrument.

11      50.  The transfer of mortgage loans into the Trust in which ENCORE, FIDELITY and/or T.D.

12  SERVICE is the Trustee after the " **closing date**" (in this case, 90 days after May 30, 2007), destroys

13  the trust's REMIC tax exempt status, and this Trust would owe millions of dollars to the IRS and the

14  State of California as the income would be taxed at one hundred percent (100%), if the Court were

15  to find in favor of the Defendant(s).  Subsequent to the "**cut off date**" listed in the prospectus,

16  whereby the mortgage notes and security for these notes had to be identified, and the Note and

17  Mortgages transferred, within 90 days, and thereafter, the pool is <u>permanently closed</u> to future

18  transfers of mortgage assets.  In this case, the **cut off date** is May 1, 2007.  **Exhibit M, page 26.**

19  After the fact, Defendants fraudulently conveyed Plaintiff's mortgage loan in an attempt to transfer a

20  Mortgage Assignment into a REMIC after that REMIC's "cut off" and "closing dates".

21      51.  Based on information and belief, the lack of lawful acquisition of Plaintiff's mortgage loan

22  violates the MBS prospectus, which Plaintiff believes was presented to the investors and the IRS

23  REMIC requirements.

24

*Myers v. Encore*                                                                                           **COMPLAINT**

**52.**   When Plaintiff signed the DOT and Note, he was unknowingly converting his home into an alleged asset of a Trust.  Further, his credit and signature was used to pre-sell securities, the profits of which were used to pre-fund his predatory "loan", without his consent or knowledge of the terms and conditions of the contract.  Under the controlling trust documents, a percentage of the homeowner's monthly payment stream was used as a guarantee.

**53.**   Under the MBS, whether or not the homeowner/borrower stops paying on the note obligation, the Servicer is obligated to advance to the "Collection Account" payments representing non-performing loans on behalf of the Borrower.  The money used is not the Servicers own money and there is no provision in the MBS on what is to occur when the homeowners "default."  The only provisions for "default" under the MBS is the default of the Servicer.

54.   California Commercial Code §3602(a) and UCC 3-602(a) provide that an obligation paid is an obligation extinguished.  Plaintiff was never informed of the nature of the scheme.  He was deliberately induced into signing a Negotiable Instrument which was never intended as such, but intended as collateral for the sale of securities.  Under the terms of the typical PSA, his mortgage obligation has been paid.  His alleged "default" is a fiction.

55.   As required by SEC, this Trust has a Pooling and Servicing Agreement ("PSA").

**Exhibit M.**   The only purpose for the PSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the Trust.  The investors who put up money for the Trust and who received the securities certificates or Bonds and the Borrowers, such as Plaintiff, are purported by Defendant to not be parties to the PSA. However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions are interdependent of one another and interrelated and, therefore, fall under the scope of a "single transaction", as defined by the Doctrine. The transactions meet the "interdependence test", the "end results" test, and the "binding commitment test". The Borrowers and the Investors are the true Principals to the transaction, with

*Myers v. Encore*                                                                                           **COMPLAINT**

1  the only financial and pecuniary interest in the transaction(s). Plaintiff alleges that he is a party to

2  the undisclosed  trust, if the asset ever legally and lawfully was conveyed into the trust. If the Court

3  determines that the Note and DOT were not properly assigned, endorsed, and conveyed into the

4  unknown trust, then Plaintiff would have no privity to this trust whatsoever. Privity is established by

5  lawful assignment from Lender to Assignee, thus extinguishing the Borrower/Lender privity to

6  contract, and establishing the new Borrower/Assignee privity to the contract. Plaintiff assumes he is

7  in privity with his true creditor, whomsoever that may be.

8      56.   The PSA merely sets forth what happens after the mortgages are bundled together.

9  However, the PSA also sets forth a ***Cut Off Date***.  The Cut off date is the date on which all mortgage

10  loans in the Trust must be identified and set out in the SEC required list of mortgage loans.

11      57.   Like the cut off date, this Trust had a ***Closing Date***.  The Closing Date, is the date that the

12  individually identified mortgages were to be transferred through the Custodian for the benefit of the

13  investors.  The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has

14  possession of the original Promissory Note, all original endorsements and assignments transferring

15  the Note and proof that the ownership of the Note has been lawfully transferred for the benefit of the

16  investors.  Further proof of the ownership of a mortgage loan is required by a public recording of the

17  Mortgage or Assignment of the mortgage itself.

18      58.   Here, the Note and Mortgage were severed or bifurcated when the Plaintiff's DOT was

19  fraudulently assigned without the Note. ENCORE never loaned any money to the Plaintiff, nor did

20  they extend their own credit (See Cal. Fin. Code §§ 22001, 22009).

21  **Separate Failure to Resolve Prior to Sale**

22      59.   Plaintiff entered into loan modification negotiations with EMC.  At that point, the Plaintiff

23  assumed that the person collecting his payments had a right to do so.  In retrospect, it has been

24  revealed that they did not.  The true creditor, the one who holds the rights to the obligation on

- 19-

1  Mr. MYERS's note is absent from the chain of title.

2      60.  Plaintiff called the purported lender/servicer of the subject mortgage to advise about his

3  financial situation and to request assistance in the form of a repayment plan or other modification

4  relief designed to avoid foreclosure and the loss of his home.

5      61.  Despite the Plaintiff's efforts, the purported lender/servicer failed, refused and/or neglected

6  to work with Plaintiff in any reasonable way to avoid foreclosure during the time of his financial

7  difficulties.

8      62.  Instead, the purported lender/servicer secretly was transferring the DOT and then has

9  attempted to foreclose, without notice to Plaintiff.

10     63.  The purported lender/servicer failed, refused and/or neglected to disclose to Plaintiff what

11  options were available to the Plaintiff, to avoid foreclosure and the loss of this home.

12     64.  As a result, Plaintiff were not provided with the specialized assistance and default loan

13  servicing that the lender/servicer was obligated to provide that comported with the Plaintiff's ability

14  to pay and that served to assist Plaintiff in his efforts to avoid the default and the acceleration of the

15  subject mortgage debt and foreclosure.

16     65.  Defendant failed, refused and/or neglected to evaluate the particular circumstances

17  surrounding Plaintiff's claimed default; failed to evaluate Plaintiff or the subject property; failed to

18  determine the Plaintiff's capacity to pay the monthly payment or a modified payment amount; failed

19  to ascertain the reason for the Plaintiff's claimed default, or the extent of the Plaintiff's interest in

20  keeping the subject property.

21     66.  The Defendants failed, refused and/or neglected to give this Plaintiff the opportunity to

22  cooperate in resolving the debt.

23     67.  The Defendants purposefully deceived Plaintiff that the Mortgage modification was

24  proceeding as planned and deceptively and purposefully wrongfully foreclosed on Plaintiff's

- 20-

*Myers v. Encore*                                                                    **COMPLAINT**

1   property.

2                          **FIRST CAUSE OF ACTION**

3                       **Violations of Truth In Lending Act**

4           Plaintiff reaffirms and re-alleges paragraphs 1 through 67 above herein as set forth fully

5   below.

6       **68.**   Pursuant to 15 USC §1605 and Regulation Z, 12 CFR §226.4, incident to the extension of

7   credit, Defendant has a duty to disclose certain finance charges shown on the TILA statement and

8   certain information, such as the identity of the creditor; each amount that is or will be paid to third

9   persons by the creditor on the consumer's behalf, together with an identification of or reference to

10  the third person; that the loan exceeded the fair market value of the Subject Property with, a clear

11  and conspicuous statement that--(A) the interest on the portion of the credit extension that is greater

12  than the fair market value of the dwelling is not tax deductible for Federal income tax purposes; and

13  (B) the consumer should consult a tax adviser for further information regarding the deductibility of

14  interest and charges."

15      **69.**   Defendant and/or its agents breached this duty by failing to include and disclose certain

16  charges in the finance charge shown on the TILA statement, which charges were imposed on

17  Plaintiff incident to the extension of credit to him, and were required to be disclosed, thus resulting

18  in an improper disclosure of financial charges in violation of 15 USC §1601 et seq., 12 CFR

19  §226.18(d) (Regulation Z).  Such undisclosed charges included some identified on the settlement

20  statement listing the amount financed which is different from the sum listed in the original note.

21  Other required information Defendant failed to disclose included the identity of the actual creditor;

22  each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together

23  with an identification of or reference to the third person; that the loan exceeded the fair market value

24  of the Subject Property and a "clear and conspicuous statement that--(A) the interest on the portion

1  of the credit extension that is greater than the fair market value of the dwelling is not tax deductible

2  for Federal income tax purposes; and (B) the consumer should consult a tax adviser for further

3  information regarding the deductibility of interest and charges."

4      70.  Plaintiff relied on Defendant's and/or its agents documents and assurances as being truthful,

5  accurate, and providing full disclosure.  On or about March 8, 2007, Plaintiff signed the DOT and

6  Note against the Subject Property in the amount of $226,320.  The DOT identified ENCORE as the

7  "Lender" and FIDELITY as the "Trustee".  However, the Defendant and/or its agents did not

8  disclose the actual lender was not ENCORE as named on his Note and Deed, or the true identities of

9  the beneficiaries entitled to his mortgage payments and with whom he could negotiate a re-write of

10  his home loan.  Defendant and/or its agents also did not disclose that a portion of Plaintiff's

11  mortgage payment was used to purchase default insurance.  **Exhibit M, pages 31 and 39.**

12      **71.**    Further, the Defendant and/or its agents did not disclose to him the effect of the interest-

13  only loan on his APR, finance charges, amount financed, total payments, payment schedule, and

14  right to cancel.  In addition, Because of Defendant and/or its agent's breach Plaintiff relied to his

15  detriment on Defendant and/or its agent's documents and assurances, which resulted in (a)  not

16  knowing the true Lender to contact to have his loan re-written to conform to a "30-year fixed

17  conventional" loan; (c) his obtaining a loan that he never would have accepted if he knew the true

18  facts; (d) his inevitable default on the loan and the catastrophic effect on his credit; (e)  numerous

19  attempts to wrongfully evict him from his home; (f) having his home foreclosed and sold even

20  through his mortgage payments were current as a result of the default insurance that he had

21  unknowingly purchased; (g)  fraudulent information attached to his name and credit; and (h)  a toll

22  on his personal well-being.

23      **72.**  Under 12 C.F.R. § 226.15 and 15 U.S.C.A. § 1635 Plaintiff has a right to rescind the security

24  interest in his home, the Subject Property, within three years from the date of consummation of the

1   transaction.

2   73.   Under the statute, once Plaintiff is entitled to rescind the loan transaction and the security

3   interest in the Subject Property becomes void, and Plaintiff was no longer liable for any amounts,

4   including any finance charge.

5   74.   Defendant and/or its agent's failure to provide the required disclosures provides Plaintiff

6   with the right to rescind the transaction, and Plaintiff, through this public complaint which is

7   intended to be construed, for purposes of this claim as a formal notice of rescission, hereby elects to

8   rescind the transaction.

9   75.   Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

10   fraud committed upon him in April of 2011.  Any applicable statute of limitations should run from

11   this date.  Plaintiff could not have learned of these violations at the time the loan was obtained by

12   looking at his loan documents and escrow closing statements as the true facts of the lender and the

13   securitization of his Note and DOT and the fees attached thereto, which was undisclosed to him are

14   not apparent from the face of the loan documents, nor DOT.

15                         **SECOND CAUSE OF ACTION**

16               **Violations of Real Estate Settlement Procedures Act**

17            Plaintiff reaffirms and re-alleges paragraphs 1 through 75 herein as set forth fully below.

18   76.   Defendant is subject to the provisions of the real estate settlement procedures act

19   ("RESPA"), 12 USC §2601 et. seq., particularly §2605 regarding **(a)** Disclosure to applicant relating

20   to assignment, sale, or transfer of loan servicing and §2607 regarding prohibition against kickbacks

21   and unearned fees.

22   77.   In violation of 12 USC §§2605 and 2607 in connection with the mortgage loan to Plaintiffs,

23   Defendant and/or its agents excepted charges for the rendering of real estate services which were in

24   fact charges for other than services actually performed, interest only adjustable rate mortgage, which

1  in fact was used to purchase securities and the attendant fees provided for in the MBST Master Sales

2  and Servicing Agreement.

3    78.  Under 12 U.S.C.A. § 2605 a servicer has a duty to respond to borrower inquiries.  When a

4  servicer receives a Qualified Written Request ("QWR") the servicer has a duty to provide a written

5  response acknowledging receipt of the correspondence within 20 days.

6    79.  The servicer also has a duty not later than 60 days after conducting an investigation, to

7  provide the borrower with a written explanation or clarification that includes--

8    **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the
   account of the borrower is correct as determined by the servicer; and

9    **(ii)** the name and telephone number of an individual employed by, or the office or department
   of, the servicer who can provide assistance to the borrower; or

10   **(iii)** after conducting an investigation, provide the borrower with a written explanation or
   clarification that includes--

11

12     **(a)** information requested by the borrower or an explanation of why the information
   requested is unavailable or cannot be obtained by the servicer; and

13     **(b)** the name and telephone number of an individual employed by, or the office or
   department of, the servicer who can provide assistance to the borrower.

14

15   80.  Here, the Servicer breached that duty.  As a result of the Defendants violations of  RESPA,

16  Defendants are liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by

17  Plaintiff for "settlement services" pursuant to 12 USC §2607 (d) (2).  The Servicer of MBST is

18  making money off of Plaintiff's predatory loan, in violation of RESPA, all to their damage

19  according to proof.

20   81.  Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

21  fraud committed upon him in April of 2011.  Any applicable statute of limitations should run from

22  this date.  Plaintiff could not have learned of these violations at the time the loan was obtained by

23  looking at his loan documents and escrow closing statements as the true facts of the lender and the

24

*Myers v. Encore*                                                                 **COMPLAINT**

1  securitization of his Note and DOT and the fees attached thereto, which was undisclosed to him are

2  not apparent from the face of the loan documents, nor DOT.

### THIRD CAUSE OF ACTION

### Violations Of Fair Credit Reporting Act

### (As to All Defendants and DOES)

6       Plaintiff reaffirms and re-alleges paragraphs 1 through 81 above as if set forth fully herein

7  below.

8    82.  At all times material, Defendants qualified as a provider of information to the Credit

9  Reporting Agencies, including but not limited to Experian, Equifax and Trans Union, under the fair

10  credit reporting act.  Defendant and/or its agent wrongfully, improperly, and illegally reported

11  negative information as to Plaintiff, by falsely reporting the mortgage loan payments were in default,

12  to one or more credit reporting agencies, resulting in Plaintiff's having negative information on his

13  credit reports and the lowering of their FICO scores.

14      A.     The negative information included but was not limited to an excessive amount of debt

15             into which Plaintiff was tricked into signing;

16      B.     Notwithstanding the above, Plaintiff has paid each and every payment on time from

17             the time of the closing of the loan and until Plaintiff's alleged default.

18    83.  The information reported to the above-named credit agencies, included the "fact" that

19  Plaintiff defaulted on the obligation under the note.  This was in fact false, as the defendant did not

20  own or otherwise have a right to Plaintiff's payments AND the plaintiff's loan is current as the

21  payments are being made by the servicer.

22    84.  Pursuant to 15 USC §1681 (s) (2) (b), Plaintiff is entitled to maintain a private cause of

23  action against Defendants for an award of damages in an amount to be proven at the time of trial for

24

*Myers v. Encore*                                     **COMPLAINT**

1  all violations of The Fair Credit Reporting Act which caused actual damages to Plaintiffs, including

2  emotional distress and humiliation.

3      85.  Plaintiff is entitled to recover damages from Defendants for negligent non-compliance with

4  The Fair Credit Reporting Act pursuant to 15 USC §1681 (n) (a) (2) in an amount to be proven at the

5  time of trial.

6      86.  Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

7  fraud committed upon him  in April of 2011.

8      87.  Plaintiff could not have learned of these violations at the time the loan was obtained by

9  looking at his loan documents and escrow closing statements as the true facts of the lender and the

10  securitization of his Note and DOT and the fees attached thereto, which was undisclosed to him,

11  were not apparent from the face of the loan documents, nor DOT.

12                              **FOURTH CAUSE OF ACTION**

13                                       **FRAUD**

14          Plaintiff reaffirms and re-alleges paragraphs 1 through 87 above as if set forth fully herein

15  below.

16      88.  Defendant ENCORE knowingly and intentionally concealed material information from

17  Plaintiff which is required by federal and state statutes and regulations to be disclosed to the Plaintiff

18  both before and after closing, namely that as soon as his loan was finalized, his note and DOT would

19  be conveyed to a MBS and that the lender, ENCORE would be paid in full.   Plaintiff was not told

20  that part of his loan payments would be used to pay service fees to the Servicer and to buy insurance

21  and other credit enhancements to be used by the Servicer of the MBS. These payments are currently

22  being used to keep Plaintiff's note current.

23      89.  Defendants, by their actions, participated in the scheme in the contracting to provide

24  mortgage loan services and a loan program to Plaintiff [which was not only to be best suited to the

*Myers v. Encore*                                                        **COMPLAINT**

Plaintiff] given his income and expenses, but by which Plaintiff would also be able to satisfy his

obligations without risk of losing his home, were "fiduciaries" in which Plaintiff reposed trust and

confidence, especially given that Plaintiff was not and is not an investment banker, securities dealer,

mortgage lender or mortgage broker.  Plaintiff was defrauded and duped into a loan and an

obligation that he could not afford.  Plaintiff will lose all that he has put into the Subject Property,

while  Defendants will lose nothing and in fact make money off of the MBS and the subsequent

impending sale of Plaintiff home and then insurance claim to the federal government for the

deficiency.  Plaintiff promise to pay and credit were stolen from him to use in the MBS investment

scheme and a higher mortgage and mortgage rate were charged to him, and the increased "fees" all

used for the enrichment of ENCORE and/or T.D. SERVICE and/or their agents and the other parties

to the MBS.

90.  Defendants breached their duty of care Plaintiff by fraudulently inducing Plaintiff to enter

into a mortgage transaction which was contrary to the Plaintiff's stated intentions; contrary to the

Plaintiff's interest; and contrary to the Plaintiff's preservation of his home.

91.  Defendant ENCORE and/or T.D. SERVICE and/or their agents, though they have no right

title or interest in Plaintiff's note and DOT, falsely filed documents with the Sacramento County

Recorder's Office claiming that Plaintiff had defaulted on the obligation, and falsely invoked non

judicial foreclosure clause and the power of sale in the DOT, though there was no proper

substitution of trustee and an invalid and false "assignment of DOT" filed with the County Recorder.

No valid assignment agreement between the oblige on Plaintiff's note and the current foreclosing

entities has been filed as required by California law.

92.  Defendants fraudulently misrepresented its standing to foreclose on Plaintiff's note and DOT

Plaintiff, to the state of California, through the recorder's office and to the public, by falsely

reporting a default on the loan and ruining Plaintiff's credit, with full knowledge of that their

1   representations were false, fraudulent, and misrepresented the truth at the time said representations

2   were made.

3     93.   Plaintiff not being an investment banker, securities dealer, mortgage lender, or mortgage

4   broker, reasonably relied upon the fraudulent and false representations of the Defendants in agreeing

5   to execute the mortgage loan documents.

6     94.   Had Plaintiff known of the falsity of Defendants' fraud and false representations, Plaintiff

7   would not have entered into the transaction the subject of this action.

8     95.   As a direct and proximate cause of Defendants' fraud, material omissions and material

9   misrepresentations, Plaintiff has suffered damages, all according to proof at trial.

10    96.   Under the totality of the circumstances, these fraudulent acts were malicious with the intent

11  to trick and harm Plaintiff.  Defendants' actions were willful, wanton, intentional, and with a callous

12  and reckless disregard for the rights of Plaintiff justifying an award of not only actual compensatory

13  damages, but also exemplary punitive damages to serve as a deterrent not only as to future conduct

14  of the named Defendants herein, but also to other persons or entities with similar inclination.

15    97.   Plaintiff first learned of the actions of Defendants, including their failure to disclose and the

16  fraud committed upon him in April of 2011.  Any applicable statute of limitations should run from

17  this date.  Plaintiff could not have learned of these violations at the time the loan was obtained by

18  looking at his loan documents and escrow closing statements as the true facts of the lender and the

19  securitization of their note and DOT and the fees attached thereto, which was undisclosed to him are

20  not apparent from the face of the loan documents, nor DOT.

21                              **FIFTH CAUSE OF ACTION**

22                                  **Unjust Enrichment**

23        Plaintiff reaffirms and re-alleges paragraphs 1 through 97 above as if set forth fully herein

24  below.

*Myers v. Encore*                                                                    **COMPLAINT**

98.  Defendant should have disclosed and ensured that Plaintiff understood all fees which would be paid to the Defendants to obtain credit on Plaintiff's behalf and not to charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiffs.

99.  Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not limited to from the resale of mortgages and notes using Plaintiff's identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and yield spread premium fees, fees paid to Servicer, unrelated to the settlement services provided at closing.

100. Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

101. Defendants have also been additionally enriched to the receipt of payment from third parties, including but not limited to, investors, insurers, the United States Department of the Treasury, the United States Federal Reserve, the FDIC and other banks.

102. Plaintiff demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorney's fees.

103. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon him  in April of 2011.  He rescinded his loan in January of 2009, which was ignored.  He filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him.

104. Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon him in April of 2011.  Any applicable statute of limitations should run from this date.  Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the

1    securitization of their note and DOT and the fees attached thereto, which was undisclosed to him are

2    not apparent from the face of the loan documents, nor DOT.

### SIXTH CAUSE OF ACTION

### Civil RICO Violations

5        Plaintiff reaffirms and realleges paragraphs 1 through 104 above as if set forth fully herein

6    below.

7    105. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted

8    and predetermined acts and conduct specifically designed to defraud Plaintiff constitute an

9    "enterprise", with the aim and objective of the enterprise being to perpetuate a fraud upon the

10   Plaintiff through the use of intentional nondisclosure, fraud, and creation of the fraudulent loan

11   documents.

12   106. The predicate acts alleged here cluster around violations of federal law involving mortgage

13   lending, bank regulations and consumer credits laws as alleged in this complaint along with

14   violations of various California state laws concerning conveyance of notes and deeds of trust.  See

15   15 U.S.C.§§1601 et seq., 1639 et.seq., 1681; 12 U.S.C. 2601 and California Civil Code §2923.5,

16   §2924 and §2934, California Commercial Code § 3602 and California Corporations Code §313,

17   respectively.

18   107. Other RICO predicate acts were part of the overall conspiracy and pattern of racketeering

19   *activity* alleged herein, *e.g.* mail fraud and bank fraud.  See 18 U.S.C. §§1341 and 1344,

20   respectively.

21   108. Plaintiff alleges that the list of exhibits attached to this Complaint, show the false and

22   fraudulent documents filed with the Sacramento County Recorder Office constitutes probable cause

23   for granting all relief requested in this Complaint.  Plaintiff alleges that Defendant ENCORE did,

24   each, act wrongfully to take or attempt to take and to deprive him of his property, knowing that he,

1   without his knowledge converted his note and DOT to a Mortgage Backed Security, to charge him

2   for insurance and other forms of credit enhancements, which have paid Plaintiff's note, thereby

3   falsely claiming a "default" on the obligation.

4       109. At various times and places enumerated in Plaintiff's Exhibits, Defendants did acquire and/or

5   maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who

6   were associated in fact and who did engage in, and whose activities did affect, interstate and foreign

7   commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

8       110.  The primary cause of this action is a widespread civil and criminal enterprise engaged in a

9   pattern of racketeering activity across State lines, and a conspiracy to engage in racketeering activity

10  involving numerous RICO predicate acts during at least the past five years.

11      111. During the pertinent time in question, Defendant participated in the in the commission of two

12  or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A)

13  and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b). These acts include falsifying

14  signatures. Specifically, ENCORE or its agents used false signatures of what are commonly known

15  as "robo-signers".

16      112. Plaintiff further alleges that Defendant did commit two or more of the offenses itemized

17  above in a manner in paragraphs 12-51 above which they calculated and premeditated intentionally

18  to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in

19  violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

20      113. Under the principles of Respondent superior, the principal is liable for agents' misconduct,

21  including knowledge of, participation in, and benefit from a RICO enterprise.

22      114. Any allegation about acts of any corporate or other business Defendant means that the

23  corporation or other business did the acts alleged to by its officers, directors, employees, agents

24  and/or representatives while they were acting within the actual or ostensible scope of their authority.

*Myers v. Encore*                                                                                    **COMPLAINT**

115. At all times each Defendant committed the acts, Defendant directed others to commit the acts, or permitted others to commit the acts alleged in this complaint.

116. At all relevant times, Defendant knew or realized that the other parties were engaging in or plan to engage in the violations of law as alleged in the amended complaint.  Knowing or realizing that the other parties were engaging in and are planning to engage in unlawful conduct, Defendant nevertheless facilitated the commission of those unlawful acts.  Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other parties in the unlawful conduct.

117. At all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is to engage in the violations of law alleged in the complaint.  This conspiracy, common enterprise, and common course of conduct continue to the present.

118. As a direct result of the actions of the Defendants, Plaintiff has and continues to suffer damages.

**119.** Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon him in April of 2011.  He rescinded his loan in January of 2009, which was ignored.  He filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him.

**120.** Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon him in April of 2011.  Any applicable statute of limitations should run from this date.  Plaintiff could not have learned of these violations at the time the loan was obtained by looking at his loan documents and escrow closing statements as the true facts of the lender and the securitization of his Note and DOT and the fees attached thereto, which was undisclosed to him are not apparent from the face of the loan documents, nor DOT

*Myers v. Encore*                                                                                           **COMPLAINT**

**SEVENTH CAUSE OF ACTION**

**Violation Of California Business And Professions Code Sections 17200 Et Seq.**

Plaintiff reaffirms and realleges paragraphs 1 through 120 above as if set forth fully herein below.

121. California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

122. As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

123. Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by

    (a)  Assessing improper or excessive late fees;

    (b)  Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

    (c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    (d)  Misapplying or failing to apply customer payments;

    (e) Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

    (f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due, pursuant to the MBST and MSAA.

*Myers v. Encore*                                                                                **COMPLAINT**

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

124. The Foreclosing Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

125. Moreover, the Foreclosing Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by the Foreclosing Defendants is designed to defraud California consumers and enrich the Foreclosing Defendants.

126. The foregoing acts and practices have caused substantial harm to California consumers.

127. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Defendant, Plaintiff and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

128. By reason of the foregoing, the Defendant have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiff is

*Myers v. Encore*                                                                                                    **COMPLAINT**

1  therefore entitled to injunctive relief and attorney's fees as available under California Business and

2  Professions Code Sec. 17200 and related sections.

**EIGHTH CAUSE OF ACTION**

**Breach of Security Instrument**

5      Plaintiff reaffirms and realleges paragraphs 1 through 128 as if set forth fully herein below.

6    129. The DOT is the document which allows a non-judicial foreclosure to proceed and gives

7  Power of Sale to the duly appointed Trustee.  Per the DOT, only the Lender can invoke the

8  foreclosure (See, DOT, **Exhibit B,** paragraph 22).  Per DOT paragraph 24, the Lender may appoint a

9  trustee.  The Substitution of Trustee in this case is void, due to fraud, and was not executed in

10  compliance with California Civil Code§2934(a).  The Substitution of Trustee was invalid also

11  because it was not executed by the Lender, per requirement of the DOT.  The duly appointed Trustee

12  under the DOT as of the recording of the NOD was FIDELITY.   T.D. SERVICE was not effectively

13  substituted in as trustee.  (See, *Substitution of Trustee*, **Exhibit D)**  The NOD was recorded PRIOR

14  to the assignment, which if it were the true holder-in-due-course, it would be mandatory to obtain

15  beneficial interest in the DOT, prior to invoking foreclosure.   In the case of a deed of trust with a

16  power of sale, an assignee can only enforce the power of sale if the assignment is recorded, since the

17  assignee's authority to conduct the sale must appear in the public records.   A non-judicial

18  foreclosure sale under the power-of-sale in a deed of trust or mortgage, on the other hand, must be

19  conducted in strict compliance with its provisions and applicable statutory law. A trustee's powers

20  and rights are limited to those set forth in the deed of trust and laws applicable thereto.

21    **130.**  The notice of acceleration and notice to cure given to borrower pursuant to Section 22 of the

22  DOT, and the notice of  acceleration given to borrower pursuant to Section 18, is a condition

23  precedent to non-judicial foreclosure of the power of sale.  If the Lender fails to carry out its

24  obligation, any subsequent foreclosure is invalid.   Defendant has not complied with any expressed

1   provisions of the DOT, has speciously trespassed upon the DOT and Plaintiff's property, and the

2   foreclosure and  sale must be rendered void and rescinded under California Civil Code §3513.  Any

3   one may waive the advantage of a law intended solely for his benefit. But a law established for a

4   public reason cannot be contravened by a private agreement.  California Civil Code §3514.  All the

5   acts of Defendant as described in this Amended Complaint are a breach of the security instrument,

6   the DOT.

### NINTH CAUSE OF ACTION

### Wrongful Foreclosure

9      131.     Plaintiff reaffirms and realleges paragraphs 1 through 130 as if set forth fully herein

10   below.  California Civil Code Section 2924 mandates that a non-judicial trustee's sale "SHALL

11   NOT TAKE PLACE" unless it is done on behalf of the beneficiary of a deed of trust securing a note

12   and certain technical procedures are met.  California <u>Civil Code §2924</u> requires strict compliance to

13   foreclose non-judicially, "and a trustee's sale based on a statutorily deficient NOD is invalid.

14   California Civil Code §2924c requires that the NOD provide the name and contact information of

15   the beneficiary or mortgagee for borrowers to find out the amount they must pay, or to arrange for

16   payment to stop the foreclosure.   Here, the Defendants' NOD advises the borrower: "Upon written

17   request, the beneficiary or mortgagee will give you a written itemization of the entire amount you

18   must pay. …. To find out the amount you must pay, or arrange for payment to stop the foreclosure…

19   contact: MERS c/o T.D. SERVICE. See, **Exhibit I**, NOD.  MERS c/o T.D. SERVICE  are strangers

20   to the transaction yet appears on the NOD in the capacity reserved for the beneficiary.    Neither

21   MERS nor T.D. SERVICE was the beneficiary or entitled to act as such, yet they purported to have

22   that authority.

23      132.      Corporations Code 313 requires that the NOD state the corporate *signatory capacity*

24   of the signer.  Merrlyn L. Aguas signed the NOD on behalf of T.D. SERVICE by FIDELITY as

1  agent for Trustee.  However,  T.D. SERVICE's participation does not comport with Corporations

2  Code 313.   This makes the NOD void, not a voidable document.

3      133.      California statutes also require strict compliance to substitute a trustee under the

4  DOT.  California Civil Code § 2934(a)(2)A through D, provides that a trustee substitution is

5  accomplished only:  "by the recording in the county in which the property is located of a substitution

6  executed and acknowledged by all of the beneficiaries under the trust deed, or their successors in

7  interest"; or "the holders of more than 50 percent of the record beneficial interest."   Since the

8  beneficial interest in Plaintiff's mortgage is believed to be in the investors/certificate-holders of the

9  MBS, if the lien has not been extinguished by operation of law, then a substitution executed and

10  acknowledged by all of the beneficiaries under the trust deed must comply with the statute.   In this

11  case, nothing was filed in the County Recorder's Office to show compliance with this statute.   At a

12  minimum, a substitution executed and acknowledged by all of the beneficiaries under the trust deed,

13  ENCORE should have filed a notarized document that either all the beneficiaries under the DOT and

14  Note or that more than fifty percent (50%) of the holders of the record beneficial interest executed a

15  notarized substitution of trustee pursuant to all the requirements of Civil Code§2934(a).

16      Further California Civil Code §2924b(4), states in pertinent part:

17       *A "person authorized to record the notice of default or the notice of sale" shall
     include an agent for the mortgagee or beneficiary, an agent of the named trustee, any*
18       *person designated in an executed substitution of trustee, or an agent of that
     substituted trustee.*

19
20  The law clearly states that a Substitution of Trustee shall be recorded prior to a Notice of Default.

21      134. Moreover, The California Legislature passed Senate Bill 1137, impacting residential

22  mortgage lenders, foreclosure procedures and eviction procedures.  The law has three pertinent

23  parts.  It amends California Code of Civil Procedure § 1161(b) regarding notice of an eviction.  It

24  adds a provision strengthening the right of local governments to adopt "blight" ordinances and

- 37-

1   moreover, it modifies the non-judicial foreclosure procedures set forth in California Civil Code

2   § 2924.  The legislature recognized that the need for such legislation by stating as follows:

3        "…It is essential to the economic health of California for the state to ameliorate the
     deleterious effects on the state economy and local economies and the California housing

4        market that will result from the continued foreclosures of residential properties in
     unprecedented numbers by modifying the foreclosures process to require mortgagees,

5        beneficiaries, or authorized agents to contact borrowers and explore options that could avoid
     foreclosure…"

6

7   135.  California Civil Code § 2932.5 provides a condition precedent for an assignee of a Deed of

8   Trust prior to commencing a foreclosure:

9        Where a power to sell real property is given to a mortgagee, or other
     encumbrancer, in an instrument intended to secure the payment of money, the power

10       is part of the security and vests in any person who by assignment becomes entitled to
     payment of the money secured by the instrument.  The power of sale may be

11       exercised by the assignee *if* the assignment is duly *acknowledged and recorded*.
     (Emphasis added)

12

13  136.    Defendants in this case had a duty to Plaintiff to follow the laws, including the

14  foreclosure laws.  It did not do so in this case.

15  137.    Plaintiff called EMC, the purported lender/servicer of the subject mortgage, to advise

16  about his financial situation and to request assistance in the form of a repayment plan or other

17  modification relief designed to avoid foreclosure and the loss of his home.  Despite Plaintiff's

18  efforts, the purported lender/servicer failed, refused and/or neglected to work with Plaintiff in any

19  reasonable way to avoid foreclosure during the time of their financial difficulties.  The purported

20  lender/servicer failed, refused and/or neglected to disclose to Plaintiff what options were available to

21  the Plaintiffs, to avoid foreclosure and the loss of their home.

22  138.    As a result, Plaintiff was not provided with the specialized assistance and default loan

23  servicing that the lender/servicer was obligated to provide that comported with the Plaintiff's ability

24  to pay and that served to assist Plaintiff in his efforts to avoid the default and the acceleration of the

1    subject mortgage debt and foreclosure.  Defendant and/or its agents failed, refused and/or neglected

2    to evaluate the particular circumstances surrounding Plaintiff's claimed default; failed to evaluate

3    Plaintiff or the subject property; failed to determine the Plaintiff's capacity to pay the monthly

4    payment or a modified payment amount; failed to ascertain the reason for the Plaintiff's claimed

5    default, or the extent of the Plaintiff's interest in keeping the subject property.

6    139.     Instead, the purported lender/servicer, was secretly was transferring the DOT and then

7    has attempted to foreclose, without notice to Plaintiff.

8    140.  In or about November 2008, Plaintiff lost his job due to cut backs and he started to collect

9    unemployment of about $210 per week. Plaintiff was using his savings to pay the mortgage.

10    141. In or about January 2009, before Plaintiff was considered "in default" on his home loan, he

11    contacted EMC to ask for refinance options.  EMC did not offer any relief or assistance designed for

12    Plaintiff to avoid foreclosure.  Instead, EMC only offered Plaintiff a workout agreement for him to

13    pay $1,577 a month for three (3) months, and at the end of which they would allow Plaintiff to apply

14    for a modification.  Plaintiff made each and every $1,577 monthly payment for more than 17

15    months.

16    142. In or about May 2010 Plaintiff contacted EMC to ask about the new home affordable

17    modification program.   EMC told Plaintiff that they could not work with him unless he was in

18    default for three (3) months.  As Plaintiff was current on his payments, EMC told Plaintiff that once

19    he was in default more than three (3) months, they could work with him with the stimulus money

20    that the Obama administration was making available to homeowners like Plaintiff, who had lost their

21    jobs.

22    143. Thereafter, in or about June 2010, Plaintiff filled out and sent in his loan modification

23    paperwork.  Defendants lost some of the forms so Plaintiff sent those forms again.  Defendants'-

24    losing-and-Plaintiff's-re-sending paperwork continued for several months.  By the time Defendants

1   actually acknowledged receipt of all the paperwork that Plaintiff had sent and re-sent, EMC told him

2   his application was more than 120 days old and Plaintiff had to start the process again. Plaintiff

3   believes that Defendants strung it out to make the sale of his home inevitable.

4     144. From June 2010 to November 2010, Plaintiff called EMC for the status of his modification

5   application.  At one point, Plaintiff called "Kendra", the EMC representative assigned to his

6   application, once a week for two (2) months, but she was always "too busy" to talk or return his

7   calls.

8     145.  In late 2010, Defendants denied Plaintiff a loan modification.  By the time Plaintiff's

9   modification was denied, his formerly good credit was bad.  Plaintiff had enough income to qualify

10   for a loan of the decreased market value of his home, but not enough for what Plaintiff owed.  After

11   several weeks, Plaintiff found out that his home was up for auction.

12     146. In or about October of 2010 Plaintiff spoke to one of Defendant EMC's representatives and

13   who told Plaintiff that he could reinstate the loan if Plaintiff agreed to make payments of $2729 per

14   month, an additional payment of $5,000 which would put his monthly payment at $7729 per month.

15   Defendant's representative also said Defendant would make a decision after Plaintiff made all the

16   monthly $7,729 payments on time for the next year.  Plaintiff told the representative that the

17   monthly $7,729 payments seemed high as Plaintiff was having trouble making the monthly payment

18   of $1,500.00.   Plaintiff was very discouraged, especially when he realized in or about January 2011

19   that Defendants were stringing him along, with every intention of going through with the sale.

20     147. In April 2011 Plaintiff first learned of the actions of Defendants, including their failure to

21   disclose and the fraud committed upon him.

22     148. In April 2011 Plaintiff sent Defendants a Qualified Written Request ("QWR"), however,

23   Defendants did not respond as required.

24

*Myers v. Encore*        **COMPLAINT**

149. In May 2011 Defendants led Plaintiff to believe that they were willing to negotiate a solution that would be acceptable to both Plaintiff and Defendants.  Defendants sent Plaintiff a rescission of the *Trustee's Deed Upon Sale*.  However, Defendants are yet again putting Plaintiff through this harsh process.

150.      Due to Defendants actions, Plaintiff has been damaged, both financially and is an attempt is being made to deprive him of his residence, which is a unique asset to him.  Plaintiff demands damages for these harms and a permanent injunction against Defendant, to prevent him from being evicted from his home.

## TENTH CAUSE OF ACTION

### Quiet Title

Plaintiff reaffirms and realleges paragraphs 1 through 150 as if set forth fully herein below.

151.  W without this action, Plaintiff cannot enjoy full and clear title to the property.

152. The real party in interest on the lender's side may be the owner of the asset-backed security issued by the servicing and pooling vendor, the insurer through some claim equitable interests, or the Federal Government through the United States Department of the Treasury or the Federal Reserve. The security is "securitized" bond deriving its value from the underlying mortgages, of which the subject mortgage is one.  Thus Plaintiff is entitled to quiet title against Defendant, clearing title of the purported subject mortgage encumbrance.

153. Defendant claims an interest in the property.  However, Defendant's claims are without any right whatsoever, and said Defendants have no legal or equitable rights, claim, or interest in said property.

154. Plaintiff therefore seeks a declaration that the title to the subject property is vested in Plaintiff alone and that the Defendant, be declared to have no estate, right, title or interest in the

subject property and that said Defendant,  be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to the Plaintiff's herein.

**WHEREFORE**, Plaintiff prays this court to enter judgment against Defendants and each of them, as follows:

1.      For an order compelling said Defendants, and each of them, to sell, to transfer or release legal title and any alleged encumbrances thereon, and possession of the subject property to Plaintiff herein;

2.      For a declaration and determination that Plaintiff is the rightful holders of title to the property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

3.      For a judgment forever enjoining said Defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

4.      For a declaration that the foreclosure which was instituted be deemed and declared illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

5.      For attorneys fees according to statutes;

6.      For actual, compensatory and punitive damages.

7.       For costs of the suit herein incurred;

For such other further relief as the court may deem just and proper

Dated:  June24, 2011                    Respectfully submitted,


                                        LAW OFFICES OF HOLLY S. BURGESS

                                        By:   _/s/  **HOLLY S. BURGESS**_____.
                                                    HOLLY S. BURGESS
                                        Attorney for Plaintiff, RICHARD S. MYERS


                                    - 42-

1

## VERIFICATION

2

3        I, RICHARD S. MYERS, declare as follows:

4        I have read the foregoing Complaint for:

5           1. VIOLATIONS OF TRUTH IN LENDING ACT;
            2. VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT;
6           3. VIOLATIONS OF FAIR CREDIT REPORTING ACT;
            4. FRAUD;
7           5. UNJUST ENRICHMENT;
            6. CIVIL RICO VIOLATIONS;
8           7. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200;
            8. BREACH OF SECURITY INSTRUMENT;
9           9. WRONGFUL FORECLOSURE ;
            10. QUIET TITLE,
10

11   and except for matters stated on information and belief, the facts stated therein are true on

12   my own knowledge, and as to those matters stated on information and belief,  I believe them

13   to be true.

14        I declare under penalty of perjury under the laws of the United States that the

15   foregoing is true and correct and that this verification was executed on June 24, 2011, at

16   Auburn, Placer County, California.

17

18                                              _____
                                                RICHARD S. MYERS
19

20

21

22

23

24

25

26

27

28