1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD S. MYERS,

11            Plaintiff,                No. CIV S-11-1714 KJM KJN

12        vs.

13   ENCORE CREDIT, et al.,             ORDER AND

14            Defendants                ORDER TO SHOW CAUSE
     _____/

15

16            Defendants T.D. Service Company (TD) and JPMorgan Chase Bank, Bank of

17   America, and Mortgage Electronic Registrations Systems, Inc. (collectively "defendants") have

18   filed motions to dismiss.[1]  Plaintiff has filed a single opposition.[2]  TD filed a reply, claiming that

19   in light of plaintiff's failure to oppose its motion, it is entitled to dismissal of the action; plaintiff

20   has not asked to file a surreply challenging TD's characterization.  Even though plaintiff did not

21   file a separate opposition to TD's motion, the opposition does address TD's arguments, though

22   /////

23   _____

24       [1] Defendant Encore Credit was served with process on September 20, 2011, but has not
     appeared in this action.  Plaintiff has not sought a clerk's entry of default or a default judgment.

25       [2] Plaintiff's opposition exceeds this court's twenty-page limit.  Should counsel continue
26   to file lengthy documents without securing the court's permission, she will be subject to
     sanctions.

1   often not in the clearest terms.  The court rejects TD's claim that plaintiff did not address its

2   argument and addresses the merits of its motion below.

3   I.  Background

4          This complaint stems from the foreclosure of plaintiff's home at 8513 Pearl Way,

5   Citrus Heights, California.  It contains ten causes of action: (1) a violation of the Truth in

6   Lending Act (TILA); (2) a violation of the Real Estate Settlement Procedures Act (RESPA); (3)

7   a violation of the Fair Credit Reporting Act (FCRA); (4) fraud; (5) unjust enrichment; (6) civil

8   RICO violations; (7) a violation of California Business and Professions Code § 17200 (UCL);

9   (8) breach of security instrument; (9) wrongful foreclosure; and (10) quiet title.  Plaintiff names

10  the following defendants: Encore Credit; T.D. Service Company; Fidelity National Title

11  Insurance Company; MERS; Bank of America, as successor by merger with LaSalle Bank

12  National Association; EMC Mortgage corporation, which is owned by Bear Stearns Companies

13  LLC; Bear Stearns Asset Backed Securities Trust 2007-HE5; and ten Doe defendants.[3]  In their

14  motion to dismiss, defendants identify JPMorgan Chase as the successor in interest to EMC

15  Mortgage LLC and Bank of America identifies itself as trustee for certificate holders.

16          On November 16, 2011, plaintiff voluntarily dismissed defendant Fidelity Title

17  from the action.  ECF No. 26.

18  /////

19

20

21         [3]  The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*,

22  177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear

23  that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642).  Plaintiff is further warned that Federal

24  Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause,

25  is applicable to doe defendants.  *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567

26  LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

II.  Standards For A Motion To Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and  accept as true the factual allegations of the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'"  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of

1   judicial notice will not convert a motion to dismiss into a motion for summary judgment.

2   *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*,

3   51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d

4   977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

5   dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

6   III.  Request For Judicial Notice

7              Defendants ask the court to take judicial notice of a number of documents

8   recorded in Sacramento County, all relating to the acquisition of and foreclosure on 8513 Pearl

9   Way, Citrus Heights, California.  Defendants' Request For Judicial Notice (DRFJN), ECF No.

10  16-1,  Exs. 1-8.  The documents include a deed of trust, recorded on March 15, 2007, for 8513

11  Pearl Way, Citrus Heights; a Notice of Default, recorded on May 30, 2008; a Notice of Trustee's

12  Sale, recorded September 2, 2008; an Assignment of the Deed of Trust, recorded  July 23, 2010;

13  a Notice of Trustee's Sale, recorded January 12, 2011; a Trustee's Deed Upon Sale, recorded on

14  February 11, 2011; a Notice of Rescission of Trustee's Deed Upon Sale, recorded March 16,

15  2011; and a Lis Pendens, recorded April 1, 2011.

16              Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice

17  of adjudicative facts "not subject to reasonable dispute" because they are "capable of accurate

18  and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

19  Plaintiff does not object to the court's consideration of these documents, most of which are

20  attached to the complaint.  They are properly before the court.  *Champlaie v. BAC Home Loans*

21  *Servicing, LP*, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); *Lee v. County of Los Angeles*, 250

22  F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record).  The

23  court's reliance on these properly noticed documents does not convert this motion to dismiss into

24  a motion for summary judgment.  *MGIC Indemnity Corporation v. Weisman*, 803 F.2d 500, 504

25  (9th Cir. 1986).

26  /////

IV.  <u>Analysis</u>

    A.  <u>TILA</u>

        TILA and Regulation Z require a lender to calculate and disclose a number of terms of a loan agreement before the loan is consummated.  15 U.S.C. §§ 1601, *et seq*.; 12 C.F.R. § 226.1, *et seq.*  Failure to do so allows a borrower to bring suit to rescind the loan and recover damages from the lender.  15 U.S.C. §§ 1635, 1640.

        Here, plaintiff alleges that the lenders did not disclose information concerning the finance charges, the identity of the creditor, the amount paid to third parties on the consumer's behalf; failed to notify plaintiff that the loan exceeded the fair market value of the property and that the amount financed was different than the amount on the original note; and did not inform him of his right to cancel or the effect of the interest-only loan on the APR.  Complaint, ECF No. 2 ¶¶ 68-71.  He claims he first learned of defendants' actions in April 2011.  *Id.* ¶ 75.  He also claims the right to rescind the loan transaction and to be free of liability for any amounts.  *Id.* ¶ 73.

        Defendants argue that any TILA claims stem from the loan origination and that plaintiff acknowledges that defendant Encore Credit was the original lender.  Complaint (Compl.) ¶¶ & Ex. B (Deed of Trust); RFJN Ex. 1 (same).  Plaintiff counters that defendants "are liable for the acts of the other Defendants in this case as Defendants acted together, and in concert."  Opposition (Opp'n)  at 24.  The complaint does not plausibly allege, however, how these defendants can be liable for any deficiencies in disclosures accompanying the original loan. *See Markey v. Bank of America, N.A.*, No. 2:12-CV-00027-LDG, 2012 WL 3317789, at *3 (D. Nev. Aug. 10, 2012) ("in order to plead an adequate claim of conspiracy . . . the Plaintiff cannot merely state that a conspiracy exists"); *see also Kissinger v. Wells Fargo Bank, N.A.*.. __ F. Supp. 2d ___ (S.D. Fla. Aug. 30, 2012) (noting split of authority on question whether there is vicarious liability under TILA); *Austero v. Aurora Loan Services*, No. C-11-00490 JCS, 2011 WL

/////

3359729, at *15 (N.D. Cal. 2011) (TILA liability for assignees of the original creditor limited to situations where violation is apparent on the face of the disclosure statement).

       1. Rescission

       Even if plaintiff can amend his complaint to cure deficiencies, while complying with Rule 11 of the Federal Rules of Civil Procedure, he cannot proceed with any rescission claim under TILA.  TILA allows for rescission of certain loans and for damages, so long as the borrower acts within specified time periods.  Under 15 U.S.C. § 1635(f), if the lender fails to provide notice of rescission rights, the usual three day period is extended to three years from the date of the consummation of the transaction.  Under 15 U.S.C. § 1640(e), if the borrower seeks damages from TILA violations, he must file his action within one year of the transaction. *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163 (9th Cir. 2002) (rescission); *Edstrom v. Ndex West, LLC*, Civ. No. S–10–105 FCD/KJM, 2010 WL 4069482, at *3 (E.D. Cal. Oct. 18, 2010) (damages).

       The Ninth Circuit has observed that "the failure to make the required disclosures occurred, if at all, at the time the loan documents were signed."  *Meyer v. Ameriquest Mortgage*, 342 F.3d 899, 902 (9th Cir. 2003); *see also King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986).  In this case, the loan documents were signed in March 2007, rendering the TILA action untimely.  Compl. ¶ 16.

       Plaintiff argues he is entitled to equitable tolling, based on his claim that he did not learn of the violations because of defendants' fraud until April 2011.  Compl. ¶ 75.  He fails to acknowledge, however, that § 1635(f) is a statute of repose, not a statute of limitations, and as such is not subject to equitable tolling.  *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) ("we . . . hold that § 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"); *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010).  Even assuming that plaintiff's  mortgage was subject to rescission, this action comes too late.  *See Champlaie,* 706 F. Supp. 2d at 1042.

2. <u>Damages</u>

Plaintiff may be entitled to equitable tolling for his TILA damages claim, but the complaint as pled is too conclusory to support the assertion.  "To establish excusable delay, plaintiff must show 'fraudulent conduct by the defendant[s] resulting in their concealment of the operative facts, his failure . . . to discover the operative facts that are the basis of his cause of action within the limitations period, and his *due diligence . . . until discovery of those facts.*'" *Edstrom v. Ndex West. LLC*, 2010 WL 4069482, at *3 (quoting *Federal Election Comm'n v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996) (emphasis in original)).  Plaintiff's assertion that he did not discover the violations until April 2011 "is insufficient to establish the necessity for equitable tolling under even the pleading standards of Federal Rule of Civil Procedure 8(a)." *Lane,* 713 F.Supp. at 1100.  Plaintiff's claim of entitlement to equitable tolling is particularly weak: he says only he was not aware of defendants' violations until April 2011.  Compl. ¶ 75.[4] Plaintiff will be given leave to amend the damages portion of his TILA claim, if he is able to do so in light of Federal Rule of Civil Procedure 11.

B. <u>RESPA</u>

Plaintiff makes three claims under RESPA, which will be addressed in turn.

1. <u>Section 2605(a)</u>

First, plaintiff claims a violation of 12 U.S.C. § 2605(a), which provides "[e]ach person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding."  12

---

[4]  In his opposition to the motion to dismiss, he offers additional reasons why equitable tolling might apply.  The court expresses no opinion on the adequacy of these reasons, and cannot consider them in evaluating the sufficiency of the complaint. *Adams v. New York State Educ. Dept.*, 752 F. Supp. 2d 420, 433 n.4 (S.D.N.Y. 2010) (court will not consider information in points and authorities in considering sufficiency of complaint); *Winn v. Lassen Canyon Nursery Inc.*, No. 2:10–CV–1030–JAM–CMK, 2010 WL 4688798, at *2 (E.D. Cal. Nov. 10, 2010).

U.S.C. § 2605(a); *Derakhshan v. Mortgage Electronic Registration Systems, Inc.,* No. SACV08-1185 AG (RNBx), 2009 WL 3346780, at *6 (C. D. Cal. Oct. 13, 2009).  This claim is belied by the Deed of Trust, which states that

> [t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in the entity (known as the "Loan Servicer" that collects Periodic Payments due under the Note and Security Interest and performs other mortgage loan servicing obligations under the Note. . . . There also might be one or more changes of the Loan Service unrelated to a sale of the Note.

Compl., Ex. B at 14.  This claim is dismissed without leave to amend.

### 2. Section 2607

Second, plaintiff cites to § 2607 and contends that "Defendant [otherwise unidentified] and/or its agents excepted [*sic*] charges for the rendering of real estate services which were in fact charges for other than services actually performed, interest only adjustable rate mortgage, which in fact was used to purchase securities and the attendant fees provided for in the MBST Master Sales and Servicing Agreement."  As defendants note, this claim is nearly incomprehensible.  Apart from its utter failure to provide any factual underpinnings for the RESPA claim, it is simply not the short and plain statement contemplated by Rule 8.  *See Basham v. Pacific Funding Group*, No. 2:10-cv-96 WBS GGH, 2010 WL 2902368, at *6 (E.D. Cal. July 22, 2010) (complaint lacked "any factual enhancement whatsoever;" defendant "should not be forced to guess how it violated RESPA"); *compare Palmer v. GMAC Commercial Mortg.*, 628 F.Supp.2d 186, 193-94 (D.D.C. 2009) (complaint was adequate, if thin, when plaintiff alleged that excessive fees for the loan must have been for services not provided in light of her credit-worthiness).  As with the TILA claim, there is no suggestion, apart from the wholly conclusory claim that defendants acted together, that these defendants had any role in the origination of the loan.

/////

1        Moreover, this second RESPA claim is not timely.  Under 12 U.S.C. § 2614, a

2   claim under § 2607 must be brought within a year after the "date of the occurrence of the

3   violation. . . ."  *See Brewer v. Indymac Bank*, 609 F.Supp.2d 1104, 1117 (E.D. Cal. 2009).  As

4   noted above, plaintiff consummated this real estate loan in March 2007; the instant action, filed

5   in June 2011, is not timely.

6        Defendants do concede that the RESPA statute of limitations is subject to

7   equitable tolling and the delayed discovery rule, but argue that plaintiff's assertions do not

8   support any such claims.  *Yuleva v. Greenpoint Mortgage Funding, Inc.*, No. CIV. S-09-1504

9   LKK/KJM, 2009 WL 2880393, at *14 (E.D. Cal. Sept. 3, 2009).  Defendants are correct: as with

10   plaintiff's TILA claim, to plead his entitlement to equitable tolling, plaintiff must do more than

11   claim he was unable to discover the nature of his claim because of defendants' fraud, but rather

12   must allege facts in support of a claim of excusable delay.  *Brewer*, 609 F.Supp.2d at 1117;

13   *Edstrom*, 2010 WL 4069482, at *3.  Plaintiff will be given leave to amend this claim, again if he

14   can do so in good faith and subject to Rule 11 of the Federal Rules of Civil Procedure.

15        3. <u>Section 2605(e)(1)(A)</u>

16        Third, plaintiff alleges that in April 2011 he "sent defendants a Qualified Written

17   Request ("QWR"), however, Defendants did not respond as required."  Compl. ¶ 148.  Under 12

18   U.S.C. § 2605(e)(1)(A), "[i]f any servicer of a federally related mortgage loan receives a

19   qualified written request from the borrower . . . for information relating to the servicing of such

20   loan, the servicer shall provide a written response acknowledging receipt of the correspondence

21   within 20 days . . . . unless the action requested is taken within such period."  After receiving a

22   QWR, a servicer must either make "appropriate corrections in the account of the borrower" or,

23   after conducting an investigation, explain why the servicer believes the borrower's account is

24   correct or explain why information responsive to the request is not available and refer the

25   borrower to a person who may provide assistance to the borrower.  12 U.S.C. § 2605(e)(2).  As

26   § 2605(e) requires the "loan servicer" to respond to QWRs about the servicing of the loan, these

1   defendants, none of which is identified as the loan servicer, are not liable for this alleged RESPA

2   violation.  *Consumer Solutions REO, LLC  v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal.

3   2009); Compl. ¶¶ 5-8 (describing defendants).  This claim is dismissed without leave to amend.

4   C.   FCRA

5   Plaintiff claims that defendants qualified as providers of information to credit

6   reporting agencies and that they falsely reported that plaintiff's mortgage loan payments were in

7   default.   It appears he is bringing his claim under 15 U.S.C. § 1681s-2(b)[5].

8   The Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq*., was enacted

9   to ensure that consumer reporting agencies "exercise their grave responsibilities with fairness. . .

10  " 15 U.S.C. § 1681(a)(4).  It applies to consumer reporting agencies (CRAs) or users of reported

11  information who wilfully or negligently violate its provisions, but also imposes duties on sources

12  which provide information to CRAs, called "furnishers."  *Gorman v. Wolpoff & Abramson, LLP*,

13  584 F.3d 1147, 1153 (9th Cir. 2009).  Under section 1681s-2(a), a furnisher must provide

14  accurate information and under section 1681s-2(b), it must investigate and correct incorrect

15  information after receiving notice of a dispute.  *Id.*; *Rogers v. JPMorgan Chase Bank, NA*, No.

16  C11-1689JLR, 2012 WL 2190900, at *6 (W.D. Wa.. June 13, 2012).   There is no private right of

17  action against furnishers who provide inaccurate information. *Gorman*, 584 F.3d at 1154; *Nelson*

18  *v. Chase Manhattan Mortgage Corp*., 282 F.3d 1057, 1060 (9th Cir. 2002) ("Congress did not

19  want furnishers of credit information exposed to suit by any and every consumer dissatisfied

20  with the credit information furnished").  As plaintiff has alleged only that defendants furnished

21  inaccurate information, this claim is dismissed with prejudice.

22  /////

23  /////

24  /////

25

26  [5]  He cites to 15 U.S.C. § 1681(s)(2)(b).

D. <u>Fraud</u>

Plaintiff claims that defendant Encore[6] concealed material information that should have been disclosed before the loan was closed; that defendants "participated in the scheme in the contracting to provide mortgage loan services and a loan program to Plaintiff" and "defrauded and duped" plaintiff into a loan he could not afford;" that although Encore and TD "have no right title or interest in Plaintiff's note and DOT," they falsely claimed plaintiff had defaulted on the loan and invoked the power of sale and falsely represented their power to foreclose as reflected in the representations in the recorded documents.  Compl. ¶¶ 89-92.

Defendants argue again that there are no allegations they were involved in the origination of the loan and that these claims are not timely.  TD also argues that it cannot be liable for undertaking its duties as the trustee under the deed of trust.

In his opposition to the motion, plaintiff provides some more clarity to some of his claims of fraud.  For example, he alleges that the defendants and TD are liable for creating "the false Recorded Documents," which were filed in the Sacramento County Recorder's Office.  Opposition (Opp'n), ECF No. 18, at 26-30.

1. <u>Statute Of Limitations</u>

Under section 338(d) of the California Code of Civil Procedure, a cause of action for fraud must be brought within three years, although "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ."  This discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co,*  21 Cal.4th 383, 397 (1999).  Under the rule, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit

---

[6] *See* footnote 1 above.

1   or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the

2   facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111

3   (1998).

4          To rely on a claim of delayed discovery, a plaintiff must allege facts showing that

5   the facts could not have been discovered earlier even in the exercise of reasonable diligence and

6   identifying how and when plaintiff discovered the fraud. *Briosos v. Wells Fargo Bank*, No. C

7   10–02834 LB, 2011 WL 1740100, at *4 (N.D. Cal. May 5, 2011); but see *Bonds v. Nicoletti Oil,*

8   *Inc.*, No. CV-F-07-1600 OWW/DLB, 2008 WL 2233511, at *7–8 (E.D. Cal. May 28, 2008)

9   (questioning whether California pleading standards apply, but finding it plaintiff's burden to

10  plead facts supporting delayed discovery).

11         To the extent plaintiff relies on claims of fraud related to the loan origination,

12  which occurred in 2007, his claim is untimely.  Plaintiff's current assertion that he did not

13  become aware of the claim until April 2011 is insufficient.  He will be given leave to amend that

14  portion of this fraud claim relating to the loan origination if he can do so in good faith, consistent

15  with Rule 11.

16         2.  Later Acts

17         Plaintiff also alleges that the defendants created false documents concerning his

18  default and additional false documents alleging they had the power to foreclose, all of which

19  were recorded in Sacramento County.  He argues these documents were created and recorded in

20  2008 and thereafter, and so the claim based on their creation is timely.[7]  Nevertheless, plaintiff

21  cannot state a claim for fraud based on the purported falsity of these documents.

22         In California, a claim of fraud has five elements:  (1) the defendant made a false

23  representation as to a past or existing material fact; (2) the defendant knew the representation

24

---

25         [7] Only one document, the initial Notice of Default recorded on May 30, 2008, is outside
26  the statute of limitations.  As explained above, however, plaintiff cannot state a claim whether or
    not the document is untimely.

was false at the time it was made; (3) in making the representation, the defendant intended to

deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and

(5) the plaintiff suffered resulting damages.  *Lazar v. Superior Court,* 12 Cal.4th 631, 638

(1996); *Ali v. Humana, Inc.*, No. 12–cv–00509–AWI–GSA, 2010 WL 2376972, at \*5 (E.D. Cal.

June 22, 2012).  Plaintiff says only that he relied on defendants' representations "in agreeing to

execute the mortgage loan documents" and, had he known, he "would not have entered into the

transaction the subject of this action." [*sic*].  Compl. ¶¶ 93-94.  He does not say he relied on the

documents he claims were falsely created and recorded.  This portion of the complaint is

dismissed without leave to amend.  *See also Canalaes v. Federal  Home Loan Mortgage Corp*.,

No. CV 11-2819 PSG (VBKx), 2011 WL 3320478, at \*8 (C.D. Cal. Aug. 1, 2011) (fraud claim

cannot be based on execution and recordation of assignments of Deed of Trust, Substitution of

Trustee, Notice of Trustee's Sale and Deed Upon Sale).

        E.  Unjust Enrichment

        Plaintiff alleges that defendants were unjustly enriched as the result of the fees he

paid, which were not related to the settlement of the loan, as well as from the higher interest rate,

profits from the resale of plaintiff's mortgage, and from the receipt of payments by third parties.

        Defendants argue that to the extent these claims stem from the purported fraud in

the loan origination process, they are barred by the statute of limitations.  They are correct: to the

extent the unjust enrichment claim is based on the loan origination, it is subject to the three year

statute of limitations for fraud.  *F.D.I.C. v. Dintino*, 167 Cal.App.4th 333, 347 (2008).

        They also argue that unjust enrichment is not a cause of action, but rather is part

of a quasi-contract claim.  This court previously has found this to be so.  *See Pedersen v.

Greenpoint Mortgage Funding*, Civ. No. S-11-642 KJM EFB, 2011 WL 3818560, at \*10 (E.D.

Cal. Aug. 29, 2011).  Plaintiff has cited to *Hirsch v. Bank of America*, 107 Cal.App.4th 708, 722

(2003), in which the court found the plaintiff had stated a claim for unjust enrichment based on

the defendants' charging of excessive fees.  Defendants  rely on *Melchior v. New Line*

*Productions*, 106 Cal.App.4th 779, 783 (2003), which says "there is no cause of action in California for unjust enrichment. The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." (internal citation & quotation marks omitted).   Whatever the status of the cause of action in California, it is not adequately pleaded.  Although plaintiff alleges generally that defendants charged higher interest rates, took kickbacks, and profited from the sale of plaintiff's mortgage, he has not identified which of the defendants undertook the actions plaintiff generally attributes to all of them.  Moreover, apart from his claims that he was charged improper fees in connection with the loan origination, he has not explained why he is entitled to claim payments defendants received from third parties or even from the alleged sale of his mortgage, entitling him to pursue a claim on unjust enrichment.  He will be given leave to amend this portion of his complaint if he can do so in good faith.

F.  RICO

Plaintiff alleges that "defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitute an 'enterprise;'"that the predicate acts include violations of federal law relating to consumer credit and bank regulations; that other predicate acts were part of "the overall conspiracy and pattern of racketeering *activity* herein, e.g. mail fraud and bank fraud"(emphasis in original); and that the exhibits to the complaint show "the false and fraudulent documents filed with the Sacramento County Recorder [*sic*] Office;" that Encore participated in the commission of two or more predicate acts, which included falsifying signatures.  Compl. ¶¶ 105-111.[8]

/////

---

[8]  Plaintiff also alleges that "he filed his state court complaint which was removed to federal court by Defendant within the one year of learning of the fraud committed upon him," a somewhat puzzling claim in light of the fact that the instant action was filed in this court. Compl ¶ 119

1          Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or

2   associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct

3   of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful

4   debt."  "Racketeering activity" is defined as any of a number of "generically specified criminal

5   acts as well as the commission of one of a number of listed predicate offenses."  *Sosa v.*

6   *DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006).  A "pattern of racketeering activity" requires

7   at least two acts, and an unlawful debt is one stemming from illegal gambling.  18 U.S.C.

8   § 1961(1), (5) & (6).

9          Although § 1962 defines a crime, a plaintiff may seek civil remedies for RICO

10  violations if he has been "injured in his business or property by reason of a violation of section

11  1962. . . ."  18 U.S.C. § 1964(c).  The elements of a RICO claim are "(1) conduct; (2) of an

12  enterprise; (3) through a pattern (4) of racketeering activities (known as 'predicate acts');

13          (5) causing injury to the plaintiff's 'business or property.'"  *Grimmett v. Brown*, 75 F.3d

14  506, 510 (9th Cir. 1996).  The fifth element has two subparts: the plaintiff must show that the

15  injury was proximately caused by the conduct and that he has suffered a concrete financial loss.

16  *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).  "Congress enacted

17  RICO 'to combat organized crime, not to provide a federal cause of action and treble damages'

18  for personal injuries."  *Id.* (quoting *Oscar v. University Students Coop. Ass'n.*, 965 F.2d 783, 785

19  (9th Cir. 1992) (en banc)).

20          In addition, under §§ 1962(d) and 1964(c), a person may be civilly liable if he

21  conspired to violate any of the subsections of § 1962.  *Beck v. Prupis*, 529 U.S. 494, 500 (2000).

22  A RICO conspiracy presupposes the existence of a substantive violation of RICO, but a

23  conspirator may be liable even if he does not commit or agree to commit "the two or more

24  predicate acts requisite to the underlying offense."  *Salinas v. United States*, 522 U.S. 52, 65

25  (1997); *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

26  /////

1    Plaintiff's claim centers on defendants' alleged predatory lending practices and

2  general fraud; however neither fraud, in and of itself, nor the creation of fraudulent loan

3  documents are predicate offenses under RICO.  See *Derakhshan v. Mortgage Electronic*

4  *Registration Systems*, 2009 WL 3346780, at *4 (predatory lending is not predicate offense for

5  RICO).  Plaintiff has alleged that defendants engaged in wire fraud and bank fraud, both of

6  which are predicate offenses, 18 U.S.C. § 1961(1), but has made no attempt to identify which

7  acts constitute either wire fraud or bank fraud.  This is especially problematic, as the heightened

8  pleading standards of Rule 9(b) apply when the RICO predicate acts are acts of fraud.  *Edwards*

9  *v. Marin Park,* Inc., 356 F.3d 1058, 1065–66 (9th Cir. 2004) (citing *Alan Neuman Prods., Inc. v.*

10 *Albright*, 862 F.2d 1388, 1392 (9th Cir.1989)).  Under Rule 9(b)'s requirement, plaintiff must

11 plead with particularity the time, place, and manner of each act of fraud, as well as the role of

12 each defendant in each scheme.  *See* FED.R.CIV.P. 9(b); *Sun Savings & Loan Ass'n v. Dierdorff*,

13 825 F.2d 187, 196 (9th Cir.1987) (complaint pleaded fraud with sufficient particularity by

14 specifically alleging four instances of mail fraud, including "the dates on which the letters were

15 written, by whom and to whom the letters were sent, the letters' content, and the letters' role in

16 the fraudulent scheme").  Plaintiff has done nothing more than string together a number of

17 conclusory paragraphs with no attempt to meet general pleading standards, much less the

18 standards of Rule 9(b).  This portion is dismissed, with leave to amend.

19    G.  Unfair Competition

20    Plaintiff alleges that the foreclosing defendants charged improper late fees,

21 improperly characterized customers' accounts as being in default, instituted improper

22 foreclosures in order to generate fees, failed to apply customers' payments to their accounts,

23 sought to collect other improper fees, mishandled borrowers' accounts, and treated borrowers as

24 being in default when in fact they were not.  Compl, ¶ 123.  He characterizes these as deceptive

25 practices.

26 /////

1          To bring a UCL claim, a plaintiff must show either an (1) "unlawful, unfair, or

2   fraudulent business act or practice," or (2) "unfair, deceptive, untrue or misleading advertising."

3   *Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1043 (9th Cir. 2003) (internal citation

4   & quotation marks omitted); *Gardner v. Am. Home Mortgage Servicing, Inc*., 691 F. Supp. 2d at

5   1201. The statute is " not confined to anticompetitive business practices, but is also directed

6   toward the public's right to protection from fraud, deceit and unlawful conduct.'" *Hewlett v.*

7   *Squaw Valley Ski Corporation*, 54 Cal. App. 4th 499, 519 (1997) (quoting *Children's Television,*

8   *Inc. v. General Foods Corp*., 35 Cal. 3d 197, 209–10 (1983)).

9          Because the statute is phrased in the disjunctive, a practice may be unfair or

10  deceptive even if is not unlawful, or vice versa. *Lippitt*, 340 F.3d at 1043. An action is unlawful

11  under the UCL and independently actionable if it constitutes a violation of another law.  *Farmers*

12  *Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383 (1992); *Gardner*, 691 F.Supp.2d at 1201.

13  An act is "unfair" under the UCL if it "significantly threatens or harms competition," even if it is

14  not specifically proscribed by another law. *Cel–Tech Communications, Inc. v. Los Angeles*

15  *Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 187 (1999); *Swanson v. EMC Mortgage Corp*., No. CV F

16  09–1507 LJO DLB, 2009 WL 4884245, at *9 (E.D. Cal. Dec. 9, 2009).  An action is fraudulent

17  under the UCL if it deceives some member of the public or harms the public interest. *Patacsil v.*

18  *Wilshire Credit Corp*., No. 2:09-cv-01660-MCE-KJM, 2010 WL 500466, at *6 (E.D.Cal. Feb.8,

19  2010).  A deceptive practice falls under the "fraud" prong of the UCL:  "A UCL claim based on

20  the fraudulent prong can be based on representations that deceive because they are untrue, but

21  also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.

22  . . .  A perfectly true statement couched in such a manner that it is likely to mislead or deceive

23  the consumer, such as by failure to disclose other relevant information, is actionable under the

24  UCL." *Morgan v. AT & T Wireless Services, Inc*., 177 Cal. App. 4th 1235, 1255 (2009).  If the

25  practice is one that is likely to mislead or deceive the reasonable consumer, it is deceptive under

26  the UCL.  *Id*.  Because it is grounded in fraud, this UCL claim must meet the heightened

pleading standard of Rule 9(b) by providing the "'who, what, when, where and how' of the misconduct charged.'" *Cullen v. Netflix*, __ F. Supp. 2d __, 2012 WL 2906245, at *6 (N.D. Cal. July 13, 2012) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). Plaintiff has not attempted to meet this standard; he will be given leave to amend this claim if he is able.

H.  Breach of Security Interest And Wrongful Foreclosure

These two claims are based on plaintiff's allegations that the defendants lacked the authority to substitute the trustee and initiate foreclosure; that the Notice of Default informed plaintiff to contact MERS or TD for information about the default, yet both are strangers to the mortgage; that the Notice of Default was recorded before the substitution of the trustee; that the signatory on the Notice of Default did not list the corporate capacity of the signer; and that the various substitutions in the chain of title did not comport with section 2932.5 of the California Civil Code; and that the lender failed to explore alternatives to foreclosure.

First, it appears that the wrongful foreclosure action is premature: the earlier trustee's sale was rescinded, which presumably led to a dismissal of the unlawful detainer action. Compl., Exs. I-K.

Second, the documents attached to the complaint show the following: the Deed of Trust identified plaintiff as the borrower, Encore Credit as the lender, Fidelity Title as the trustee, and MERS as the nominee for the lender and the beneficiary under the security interest. Compl., Ex. B at 4.   The deed continues:

> TRANSFER OF RIGHTS IN THE PROPERTY.  The beneficiary of this Security Interest is MERS (solely as nominee[9] for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (I) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of the

---

[9]  A "nominee" is "a person designated to act in place of another" or one "who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Black's Law Dictionary* at 1072 (9th ed. 2009).

> Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the . . . described property. . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

Compl. Ex. B at 5-6.  The deed also provides, as noted above:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (know as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage servicing obligations under the Note, this Security Instrument, and Applicable Law.   There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

*Id*. at 14.  Finally, the deed gives the lender the power of sale and the power to substitute the trustee:

> If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall

/////

1      mail copies of the notice . . . to Borrower . . . .  After the time
       required by Applicable Law, Trustee, without demand on
2      Borrower, shall sell the property at public auction . . . .

3      Trustee shall deliver to the purchaser Trustee's deed conveying the
       Property without covenant or warranty . . .

4
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . .. . . . .
5
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . .. . . . .
6
7      Lender, at its option, may from time to time appoint a successor
       trustee to any Trustee appointed hereunder by an instrument
8      executed and acknowledged by the Lender and recorded in the
       office of the Recorder of the county in which the Property is
       located.  The instrument shall contain the name of the original
9      Lender, Trustee and Borrower . . . and the name and address of the
       successor trustee.  Without conveyance of the Property, the
10     successor trustee shall succeed to all the title, powers and duties
       conferred upon the Trustee herein. . . .

11

12  *Id*. at 15.  On May 30, 2008, a Notice of Default was recorded by TD Service "By Fidelity

13  National Title Insurance Company" as agent for the Trustee; it was signed by Merrilyn Aguas

14  and notified plaintiff to contact MERS/TD for information on the amount to pay to stop the

15  foreclosure.  *Id*., Ex. C at 24.  On August 20, 2008, MERS recorded a substitution of trustee,

16  substituting TD for Fidelity; it was signed on May 29, 2008 by someone named Liquenda, whose

17  typed last name is obscured by her signature, and by Christine Anderson, identified as VP, and

18  notarized on June 3, 2008.[10]  *Id*., Ex. D at 26.  On September 2, 2008, TD recorded a Notice of

19  Sale.  *Id*., Ex. E at 30.  On July 2010, an assignment of the deed of trust was recorded, signed by

20  Mary Cook and Whitney Cook, both identified as "VP" of MERS, assigning the deed to Bank of

21  America, as successor to La Salle Bank National Association, as Trustee for Certificateholders

22  of Bear Stearns Asset Backed Securities I LLC.  *Id*., Ex. F at 33.  On January 12, 2011, TD

23  recorded another Notice of Trustee's Sale.  *Id*., Ex. G at 36.  Thereafter, on February 20, 2011,

24

25         [10]  The delayed notarization does not affect the document's validity: "notarization is an
       acknowledgment of the signer's identity and is not essential to a document's validity." *In re Mi*
26     *Arbolito, LLC*, No. 08–04553–LT11, 2010 WL 3829660, at *17 (Bankr. S.D. Cal. Sep. 23, 2010)

TD recorded the Trustee's Deed Upon Sale, granting the property to Bank of America.  *Id*., Ex. H at 39.  Unlawful detainer proceedings were commenced, but apparently abandoned after TD recorded a rescission of the trustee's deed upon sale.  *Id*., Exs. I-K.  On June 2, 2011, TD recorded a new Notice of Trustee's Sale.  *Id*., Ex. L at 51.

### 1. Corporations Code Section 313

Plaintiff claims that the Notice of Default is not valid because the signatory did not state her corporate signatory capacity.  Compl. ¶ 132.  Section 313 does not impose such a requirement, but rather states that certain officers may bind a corporation.  *Shapiro v. Bank of America*, No. 2:11-CV-00576 JAM-CMK, 2011 WL 4851145, at *9 (E.D. Cal. Oct. 12, 2011).

### 2. The Assignment From MERS To Bank Of America

Plaintiff argues that the assignment is not valid because it did not comply with California Civil Code § 2932.5, which requires the assignment to another lender to be recorded in order for the beneficiary to foreclose.  This court has previously found that this provision applies only to mortgages, not to deeds of trust.  *Wadhwa v. Aurora Loan Services*, Civ. No. S-11-1784 KJM KJN, 2012 WL 762020, at *11-16 (E.D. Cal. Mar. 8, 2012).  Plaintiff presents nothing to suggest this court should revisit its prior ruling.

### 3. The Substitution Of The Trustee

Plaintiff asserts that MERS' substitution of the trustee was invalid because it did not comply with Section 2934(a)& (b); the court assumes he refers to sections 2934a(a)(1) and 2934a(b).  Once again, this court has found that MERS has the authority under the Deed of Trust and under California law to substitute the trustee and declines to revisit the question at this time.  *Id*. at *16-17; *Pedersen v. Greenpoint Mortgage Funding*, Civ. No. S-11-642 KJM EFB, 2011 WL 3818560, at *20-21 (E.D. Cal. Aug. 29, 2011).

### 4. The Timing Of The Notice of Default And The Substitution of Trustee

Plaintiff contends that under Section 2924b(b)(4), the Notice of Default recorded by TD is not valid because the substitution of TD as trustee was not recorded until after the

1  default.  By the terms of the statute, however, "a 'person authorized to record the notice of

2  default or the notice of sale' shall include an agent for the mortgagee or beneficiary, an agent of

3  the named trustee, any person designated in an executed substitution of trustee, or an agent of

4  that substituted trustee."  In this case, the substitution was executed before TD recorded the

5  Notice of Default, which is all the statute requires.  *Cedano v. Aurora Loan Services (In Re*

6  *Cedano*), 470 B.R. 522, 532 (9th Cir. BAP 2012).

7              5.  Compliance With Section 2923.5 of the Civil Code

8              Plaintiff alleges that the lender failed to contact him to discuss alternatives to

9  foreclosure.  Compl. ¶¶ 140-145.  Under section 2923.5(b), a notice of default must include a

10  declaration from the mortgagee, beneficiary or agent that it attempted to contact the borrower to

11  discuss alternatives to foreclosure.  This statute became effective on September 6, 2008, after the

12  Notice of Default was recorded in this case.  CAL. CIV. CODE § 2923.5; Stats. 2008, ch. 69

13  (S.B.1137), § 2.  Even assuming the statute imposed any duty on the lender, the remedy is a

14  postponement of an impending foreclosure: it does not impose a duty on the lender to agree to a

15  loan modification.  *Hamilton v. Greenwich Investors, XXVI, LLC*., 195 Cal. App. 4th 1602, 1616

16  (2011).

17              Because plaintiff has pleaded no valid claims of wrongful foreclosure and breach

18  of security instruments and it does not appear he will be able to do so, these claims are dismissed

19  without leave to amend.

20      I.  Quiet Title

21              Plaintiff claims that defendants have no interest in the property because the deed

22  has been "securitized" by its status as part of a pool of mortgages.  Compl. ¶¶ 152-153.

23  However securitization of the indebtedness does not divest the defendants of any interest in the

24  property or the power to foreclose.  *Hafiz v. Greenpoint Mortgage Funding, Inc*., 652 F. Supp.

25  2d 1039, 1043 (N.D.Cal. 2009) ("[Plaintiff's claim] is based on the erroneous theory that all

26  defendants lost their power of sale pursuant to the deed of trust when the original promissory

note was assigned to a trust pool."); *Benham v. Aurora Loan Services,* No. C–09–2059, 2009 WL 2880232, at *3 (N.D.Cal. Sept. 1, 2009) (rejecting plaintiff's argument that a beneficiary of a mortgage note loses its power of sale in deed where the note is securitized and assigned to a trust pool). This claim is dismissed without leave to amend.

IT IS THEREFORE ORDERED that:

1. TD Services' motion to dismiss (ECF No. 15) is granted;

2. The motion to dismiss filed by JPMorgan Chase Bank, Bank of America, and Mortgage Electronic Registrations Systems, Inc. (ECF No. 16) is granted;

3. Plaintiff may file an amended complaint in accordance with this order within twenty-one days; and

4. Plaintiff is directed to show cause within twenty-one days of the date of this order why his action against Encore Credit should not be dismissed for failure to prosecute.

DATED: September 30, 2012.

_____
UNITED STATES DISTRICT JUDGE